THE SUPREME COURT OF THE STATE OF KANSAS

No. 106,092

In the Matter of the Marriage of

DAVID M. TRASTER,
*Appellee*,

and

DEBRA C. TRASTER,
*Appellant*.

SYLLABUS BY THE COURT

1.

Prior to legislative enactment, the common-law rule in Kansas was that contracts, made either before or after marriage, the purpose of which was to fix property rights between a married couple, were to be liberally interpreted to carry out the intentions of the makers and to uphold such contracts when they were fairly and understandingly made, were just and equitable in the provisions, and not obtained by fraud or overreaching. Generally speaking, contracts were not against public policy, although a different rule applied when the contract terms encouraged a separation of the parties.

2.

In divorce proceedings, K.S.A. 60-1610(b)(3) provides that if the parties have entered into a separation agreement that the court finds to be valid, just, and equitable, the agreement shall be incorporated into the divorce decree.

1

3.

As used in K.S.A. 60-1610(b)(3), the term "separation agreement" is not defined by statute.

4.

In the absence of legislative clarification, the better interpretation is to define the term "separation agreement" in K.S.A. 60-1610(b)(3) to include all agreements, entered during marriage, that provide for a spouse's property rights in the event of divorce or separation, regardless of whether the parties intend to remain married at the time of the agreement's execution.

5.

K.S.A. 60-1610(b)(3) requires that a separation agreement be "valid, just and equitable" before a district court incorporates the terms into a divorce decree. This means the district court must make two independent determinations. First, the agreement must be a valid contract. This encompasses traditional contract requirements, such as a lack of fraud and public policy considerations. Second, the agreement must be just and equitable. This encompasses whether the terms provide an acceptable or fair property division under the particular circumstances.

6.

Separation agreements are subject to the same rules of law applicable to other contracts.

7.

Public policy forbids enforcement of an illegal or immoral contract, but it equally insists that those contracts that are lawful and contravene none of its rules shall be enforced and shall not be set aside or held to be invalid on a suspicion of

illegality. A contract is not void as against public policy unless it is injurious to the interests of the public or in contravention of some established interest of society. Illegality from the standpoint of public policy depends upon the facts and circumstances of a particular case, and it is the duty of courts to sustain the legality of contracts when possible. There is no presumption that a contract is illegal, and the burden of showing the wrong is upon the party who seeks to deny his or her contractual obligation. The presumption is in favor of innocence, and the taint of wrong is a matter of defense.

8.

It has long been held that contracts, including those governing property settlement rights in a divorce, are to be liberally interpreted to carry out the intention of the persons making them.

9.

The common-law public policy analysis that examined whether a property division in an agreement entered between spouses in the event of divorce or separation was so favorable to one party that it encouraged separation or divorce is disavowed in light of the legislature's statutory just and equitable requirement in K.S.A. 60-1610(b)(3).

10.

When a separation agreement is submitted for court approval under K.S.A. 60-1610(b)(3), the trial judge is given broad discretion to determine whether it is just and equitable. An appellate court reviews that determination for abuse of discretion.

3

11.

An adequate record must exist for an appellate court to determine whether a district court abused its discretion. Without such a record, the appellate court may remand for additional findings.

Review of the judgment of the Court of Appeals in 48 Kan. App. 2d 356, 291 P.3d 494 (2012). Appeal from Sedgwick District Court; ROBB W. RUMSEY, judge. Opinion filed December 19, 2014. Judgment of the Court of Appeals reversing and remanding the decision of the district court is reversed in part and affirmed in part. Judgment of the District Court is affirmed in part and reversed in part, and the case is remanded for further proceedings.

*Stephen P. Weir*, of Stephen P. Weir, P.A., of Topeka, argued the cause and was on the briefs for appellant.

*Gary L. Ayers*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *Kristy L. Simpson*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: This appeal challenges the district court's property division in a divorce case. Our focus is on a document entitled "Post-Nupt[i]al Agreement Dissolution of the Marriage," which the attorney-husband drafted during the marriage, reserving most of the assets for the wife. Husband now claims the agreement is void because of the lopsided property division, even though the agreement explicitly states it is "fair, just and reasonable, and comports with all legal requirements so as to be fully enforceable under the laws of the State of Kansas."

The district court agreed with the husband, voided the agreement, and allocated the couple's assets based on the court's own determination of what was

just and reasonable under K.S.A. 60-1610(b)(1) (division of property when no agreement controls). The Court of Appeals reversed and restored the terms favoring the wife.

The panel reasoned that Kansas should recognize two types of postnuptial agreements: (1) separation agreements governed by K.S.A. 60-1610(b)(3); and (2) all others, which would be governed by a common-law rule adopted by the panel based on whether the spouses intended to remain married when entering into the agreement. The panel found the agreement at issue in this case was entered before the parties intended to divorce, so K.S.A. 60-1610(b)(3) was not applicable. *In re Marriage of Traster*, 48 Kan. App. 2d 356, 365-67, 291 P.3d 494 (2012). We granted review and now affirm in part and reverse in part the rulings by both lower courts.

We hold the couple's agreement is controlled by K.S.A. 60-1610(b)(3), which requires a separation agreement to be incorporated into the divorce decree if the court finds it is "valid, just and equitable." We hold further that the district court erred when it invalidated the agreement based on the public policy grounds that the disproportionate property division encouraged divorce. That common-law analysis was abrogated when the legislature adopted K.S.A. 60-1610(b)(3)'s "just and equitable" requirement. We remand the case to the district court for a more detailed review into whether the agreement is just and equitable under K.S.A. 60-1610(b)(3), given the considerations detailed in the agreement, the particular circumstances of the case, and this opinion.

5

David and Debra Traster married in 1976. They have no children. David has been practicing law since 1981. Debra graduated from law school but never took the Kansas bar exam. She has had limited employment throughout the marriage and claims she is incapable of gainful employment due to a brain injury and the resulting impact on her mental health. The district court found Debra capable of sitting for the Kansas bar exam but incapable of being "employed as an attorney in the manner as most attorneys."

During their marriage, the parties entered into two agreements concerning the division of their assets upon divorce. David drafted both agreements. The first was in the 1980's and was not admitted at trial. The parties agree its provisions were identical or nearly identical to the second agreement that was admitted into evidence and which presents the central questions in this appeal. By its terms, the second agreement became effective upon David's December 2004 signature. Its terms are important to our analysis, so they must be set out in detail.

*The Trasters' 2004 Agreement*

The 2004 agreement acknowledges David was the scrivener and that Debra relied on his legal expertise and advice because she lacks "David's practical experience with drafting and enforcing agreements." It further acknowledges the couple's assets "have been accumulated largely because of loans, gifts and payments from Debra's parents." It expressly states it is "fair, just and reasonable, and comports with all legal requirements so as to be fully enforceable under the laws of the State of Kansas." It further states that neither Debra nor David have

"current plans" to divorce, but it notes "the marriage has not always been idyllic and that significant problems and differences have arisen . . . from time to time."

The agreement calls for the following unequal division of assets, as well as providing the rationale for that division:

"6. DISTRIBUTION OF ASSETS. It is acknowledged and agreed that all or nearly all of the accumulated Assets of the Parties have been contributed directly or indirectly to the marriage by . . . Debra's parents. As an example, and without limitation, Debra's parents have given educational support and vehicles at prices substantially below market value or as outright gifts. The Assets contributed by David's career and employment have been used by the Parties for maintenance of their lifestyle. For this reason, and because Debra will have no Social Security Benefits and, because of her age will have limited ability to obtain gainful employment in the event of a voluntary dissolution of the marriage by either party, and in the absence of any other agreement between the Parties executed with the same formality as this Agreement and which is in compliance with Paragraph
9. H, below, the Assets of the Parties should be and are to be divided and distributed between them as follows:

"A. *To David*: His personal belongings and effects, including his clothing, tools and guns, (Debra may elect to retain one of the Parties handguns of her choice.) and gifts and inheritances, if any, from David's family. As of the date of this agreement, there have been no such gifts or inheritances.

"B. *To Debra*: All other Assets, both real personal and mixed which are owned by the Parties at the time any proceeding for dissolution of the marriage are instituted by either Party, including but not limited to, the Parties' home, vehicles, personal property, accounts, funds, stocks, bonds, investments, buildings,

7

contracts, leases, and any other Assets owned by the Parties. This grant shall apply to all Assets, whether or not enumerated herein and to all Assets regardless of when they are or were acquired by the Parties, including after acquired property."

The agreement also contains a severability provision, stating that if "one or more provisions of this Agreement shall be held invalid or unenforceable such invalidity or unenforceability shall not affect the remaining provisions . . . ."

Finally, the agreement prohibits either party from seeking any court order contrary to its terms and enforces that prohibition by stating that each party "agrees to indemnify the other for any loss, cost or expense (including attorney fees and expenses) incurred because a Party seeks to obtain judicial modification of this Agreement."

The same day David signed the 2004 agreement the parties also executed a notarized document entitled "Post-Nupt[i]al Agreement Contract for Will," which similarly divided the couple's property, except that assets reserved to David included his individual retirement accounts, his law firm's 401(k) account, and all automobiles owned by David and Debra. It likewise acknowledged Debra's parents' financial contributions and the couple's desire for those contributions to remain with her family and similarly stated that its agreed-upon property distribution was "fair, just and reasonable, and comports with all legal requirements."

*The District Court Proceedings*

David petitioned for divorce in June 2007 based on incompatibility. This triggered K.S.A. 23-201, which gives each spouse a common interest in the

8

marital property until the district court finalizes the property division under K.S.A. 60-1610. In his petition, David did not refer to or provide the court with the couple's 2004 agreement.

In June 2010, Debra filed a motion for partial summary judgment seeking a ruling that the 2004 agreement was valid and enforceable and controlled disposition of the real and personal property in the divorce. David opposed this motion, setting the stage for the parties' dispute.

The threshold issue was whether the agreement should be characterized as a separation agreement under K.S.A. 60-1610(b)(3), requiring a judicial determination that it met the statutory standard of being "valid, just, and equitable." After a hearing, the district court held the agreement was a separation agreement under K.S.A. 60-1610(b)(3). The court set the matter for trial to determine if the contract was valid, just, and equitable based upon a full review of the parties' assets.

The trial occurred in October 2010. At its conclusion, the district court held the agreement was invalid or void as against public policy because the court found the unequal property division promoted divorce by giving David a substantial incentive to end the marriage as soon as possible so he could accumulate his own assets. And on that same basis, the district court found the agreement to be "unreasonable and inequitable," later characterizing it as "not fair and equitable." In so ruling, the district court noted David would receive only 1.13 percent of the marital assets under the agreement, while Debra would receive 98.87 percent.

The district court then made its own "just and reasonable" property division as required by K.S.A. 60-1610(b)(1), the statute governing property division when

9

the parties have no agreement. The court awarded Debra spousal maintenance for 120 months and ordered David to maintain life insurance naming Debra as the beneficiary in an amount equal to the spousal maintenance owed. It declined to award Debra attorney fees.

*The Court of Appeals Ruling*

Debra appealed to the Court of Appeals. She argued the district court erred by holding: (1) the agreement was a separation agreement under K.S.A. 60-1610(b)(3); (2) the agreement was void as against public policy or otherwise invalid; (3) the agreement was not fair and equitable, when the court looked beyond its stated terms; and (4) by declining to award attorney fees under the indemnity and severability clauses. Notably, Debra did not challenge the district court's property division as an alternative argument if she did not prevail on her claim that the contract should be enforced. See *In re Acquisition of Property by Eminent Domain*, 299 Kan. 37, 49, 320 P.3d 955 (2014) ("[A]n issue not briefed by the appellant is deemed waived and abandoned.").

The Court of Appeals reversed the district court. It held Kansas should recognize two distinct types of postnuptial agreements. The first was separation agreements governed by K.S.A. 60-1610(b)(3). *In re Marriage of Traster*, 48 Kan. App. 2d at 364. The second it identified as "postmarital agreements" to be governed by common-law principles articulated in the panel's decision. 48 Kan. App. 2d at 371-73. The distinction for the panel was whether the spouses intended to remain married at the time the agreement was executed. In other words, a separation agreement controlled by K.S.A. 60-1610(b)(3) would be one entered only when the parties have an imminent intent to actually divorce or separate. 48 Kan. App. 2d at 365.

10

The panel rationalized treating all other postmarital agreements differently because it believed married couples who are not contemplating impending divorce are in a different bargaining position than couples who no longer intend to stay married. And unlike the arm's length bargaining that occurs between spouses intending to divorce, the panel reasoned, spouses wanting to preserve their marriage share a "trusting and confidential" relationship that exposes them to a greater risk of unfair advantage in the bargaining process because: (1) "spouses who intend to stay married are unlikely to view the marital interest as distinct from their own interest;" and (2) "the spouse who has the stronger desire to preserve the marriage necessarily becomes more vulnerable to the financial demands of the other." 48 Kan. App. 2d at 365-66.

The panel then developed and adopted a six-factor test derived from caselaw from other jurisdictions to decide if the 2004 agreement should be upheld. It also determined the district court record was sufficient to allow the panel to apply its test without remand for further factual findings. 48 Kan. App. 2d at 373. In the end, the panel concluded the agreement should be upheld and its provisions fully enforced. 48 Kan. App. 2d at 380.

Finally, after upholding the agreement as a postmarital agreement, the panel reversed the district court's denial of Debra's attorney fee claim and remanded that issue to the district court to calculate the appropriate fee based on the indemnity provision. 48 Kan. App. 2d at 381-82.

David petitioned this court for review. He argues the panel: (1) improperly interpreted K.S.A. 60-1610(b)(3) by construing the term "separation agreement" to exclude postnuptial agreements formed by parties who intended to stay married;

11

(2) improperly engaged in unlimited appellate review instead of reviewing the trial court's determinations for abuse of discretion; and (3) improperly created and employed the six-part test for determining the 2004 agreement's fairness.

We granted review under K.S.A. 20-3018(b). See also K.S.A. 60-2101(b) (review of Court of Appeals decisions upon timely petition for review). We now reverse in part and affirm in part the rulings by both lower courts.

IS THE AGREEMENT A "SEPARATION AGREEMENT"
GOVERNED BY K.S.A. 60-1610(b)(3)?

Our first consideration is whether the 2004 agreement is a "separation agreement" as that term is used and governed by K.S.A. 60-1610(b)(3). David contends it is and that the district court was correct when it decided it had to determine if the contract was "valid, just and equitable" under K.S.A. 60-1610(b)(3) before its terms could control the property division. But Debra argues the agreement is not a separation agreement and therefore not governed by K.S.A. 60-1610(b)(3). She contends the agreement is a postmarital agreement, as characterized by the Court of Appeals, because she and David intended to stay married when they executed it, and not governed by statute. And from that premise, she argues the legal question is what standard should be used to determine if a postmarital agreement is enforceable.

We agree with the district court that the Trasters' 2004 agreement is a "separation agreement" under K.S.A. 60-1610(b)(3). Some contextual perspective is important.

12

*Common-Law and Statutory Background*

Under Kansas common law, agreements fixing property rights between spouses were governed by the same rules, whether executed before or after marriage. *Fincham v. Fincham*, 160 Kan. 683, Syl. ¶ 1, 165 P.2d 209 (1946). The common-law analytical tenets were stated as follows:

> "The general rule in this state is that contracts, made either before or after marriage, the purpose of which is to fix property rights between a husband and wife, are to be liberally interpreted to carry out the intentions of the makers, and to uphold such contracts where they are fairly and understandingly made, are just and equitable in their provisions and are not obtained by fraud or overreaching. Generally speaking, such contracts are not against public policy, although a different rule obtains where the terms of the contract encourage a separation of the parties . . . ." 160 Kan. at 683, Syl. ¶ 1.

These common-law rules governed enforceability of agreements pertaining to property division in divorce proceedings until they were altered in 1963, when the legislature entered the arena by enacting two statutory subsections within K.S.A. 60-1610 (Corrick 1964) as part of the then-new Code of Civil Procedure. L. 1963, ch. 303, sec. 60-1610. The first was subsection (b), which directed district courts to divide marital property "in a just and reasonable manner" in the absence of an agreement between the parties. See K.S.A. 60-1610(b) (Corrick 1964). Subsection (d), on the other hand, recognized the parties' right to enter into separation agreements governing marital property division, stating: "If the parties have entered into a separation agreement which the court finds to be valid, just, and equitable, it shall be incorporated in the decree . . . ." See K.S.A. 60-1610(d) (Corrick 1964). The term "separation agreement" has not been defined by the legislature.

13

Following 60-1610's enactment, this court decided two prenuptial agreement cases and continued to analyze the enforceability of those agreements using the common-law rule. See *In re Marriage of Adams*, 240 Kan. 315, 323-24, 729 P.2d 1151 (1986); *Ranney v. Ranney*, 219 Kan. 428, 431-32, 548 P.2d 734 (1976). This suggests the statutory term "separation agreement" was not considered applicable to prenuptial agreements providing for asset division if the parties later divorced, and, therefore, the statute did not completely replace the common law.

In 1988, the legislature addressed prenuptial agreements by enacting K.S.A. 23-801 *et seq.*, which is commonly referred to as the Kansas Uniform Premarital Agreement Act (KUPAA). L. 1988, ch. 204, sec. 1. It expressly defined premarital agreement as "an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage." K.S.A. 23-802. The KUPAA gave premarital agreements more favorable statutory treatment than separation agreements by making premarital agreements enforceable so long as they were voluntarily executed and not unconscionable. Compare K.S.A. 23-807 with K.S.A. 60-1610(b)(3). The result was that prenuptial agreement enforceability was no longer based on the common law's concern for "just and equitable" terms.

The statutory provisions concerning divorce proceedings have not changed in any material way since their enactment. K.S.A. 60-1610(b)(1), which is now K.S.A. 2013 Supp. 23-2802, governs property division when the parties do not have an agreement. That statute includes a list of factors the district court should review and further allows consideration of "such other factors as the court considers necessary to make *a just and reasonable division of property*." (Emphasis added.) This is the provision the district court invoked after it

14

invalidated the Trasters' agreement. On the other hand, K.S.A. 60-1610(b)(3), which is now K.S.A. 2013 Supp. 23-2712, directs district courts to incorporate the parties' "separation agreement" into the divorce decree if the district court finds the parties' agreement to be "valid, just and equitable." We examine next whether this statute controls the Trasters' agreed-upon property division.

*Standard of Review*

Whether K.S.A. 60-1610(b)(3) governs marital agreements entered after marriage when the parties intend to stay married is an issue of first impression for this court. Resolving it requires interpretation of K.S.A. 60-1610(b)(3), which is a question of law subject to unlimited review. And the most fundamental rule of statutory interpretation is that the legislature's intent governs if that intent can be ascertained. In that quest, an appellate court's first task is to read the statute's plain language, giving ordinary words their ordinary meanings. *Eastman v. Coffeyville Resources Refining & Marketing*, 295 Kan. 470, 473, 284 P.3d 1049 (2012). But if the statute's language is subject to multiple interpretations

> "'a reviewing court "may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citation omitted.]" [Citation omitted.] Generally, courts should construe statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. [Citation omitted.] We ascertain the legislature's intent behind a particular statutory provision "from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citation omitted.]" [Citations omitted.] Thus, in cases that require statutory construction, "courts are not permitted to consider only a

15

certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia*." [Citation omitted.]'" *Milano's, Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013).

*Analysis*

The statute governing separation agreements does not expressly define its scope. It states in relevant part:

> "(3) *Separation agreement. If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree.* A separation agreement may include provisions relating to a parenting plan. The provisions of the agreement on all matters settled by it shall be confirmed in the decree except that any provisions relating to the legal custody, residency, visitation parenting time, support or education of the minor children shall be subject to the control of the court in accordance with all other provisions of this article." (Emphasis added.) K.S.A. 60-1610(b)(3).

A plain language argument can be made based on a dictionary definition of "separation agreement." One describes the term as "[a]n agreement between spouses *in the process of* a divorce or legal separation concerning alimony, maintenance, property division, child custody and support, and the like." (Emphasis added.) Black's Law Dictionary 1572 (10th ed. 2014). In contrast, a "postnuptial agreement" is:

> "An agreement entered into during marriage to define each spouse's property rights in the event of death or divorce. *The term commonly refers to an agreement between spouses during the marriage at a time when separation or divorce is not imminent. When dissolution is intended as the result, it is more*

16

*properly called a property settlement or marital agreement.*" (Emphasis added.)
Black's Law Dictionary 1356 (10th ed. 2014).

But a fair criticism of this approach must acknowledge that it depends on a modern edition of Black's. Notably, the earlier fourth edition of that resource, which was in effect when the legislature enacted K.S.A. 60-1610 (Corrick 1964), did not define "separation agreement." See Black's Law Dictionary (4th ed. 1951). So to the extent this court wants to put itself in the 1963 legislature's shoes to divine its legislative intent, Black's is not helpful.

Similarly, K.S.A. 60-1610's legislative history is unavailable because its initial enactment predates regular maintenance of committee reports. Accordingly, the historical background providing the circumstances attending the statute's original passage and its legislatively stated purposes are unknown.

There is also no clear definition of "separation agreement" in this court's caselaw, although the term has appeared in Kansas since at least 1900. A review of that caselaw shows the term was never clearly defined. See, *e.g.*, *King v. Mollohan*, 61 Kan. 683, 60 P. 731, *aff'd on reh.* 61 P. 685 (1900). At best, it can be seen from the caselaw that there are instances preceding K.S.A. 60-1610(b)'s enactment that seem to apply the term "separation agreement" to marital agreements governing property settlements entered temporally around or during divorce proceedings. See *Likes v. Likes*, 191 Kan. 630, 631, 383 P.2d 983 (1963) ("separation agreement" entered on November 23, 1960; divorce granted December 13, 1960); *Hoch v. Hoch*, 187 Kan. 730, 731-32, 359 P.2d 839 (1961) (summarizing that property agreement was reduced to writing and signed by both parties and defendant "[s]ubsequently . . . signed his entry of appearance in the divorce action"); *Feldmann v. Feldmann*, 166 Kan. 699, 701-02, 204 P.2d 742

17

(1949) (divorce filed within a few weeks after the "separation agreement" was executed); *Shaffer v. Shaffer*, 135 Kan. 35, 36, 10 P.2d 17 (1932) (divorce filed in July 1930; "separation agreement" reduced to writing in November 1930). But see *Leverenz v. Leverenz*, 183 Kan. 79, 80, 325 P.2d 354 (1958) (stating "in 1947, the parties signed a separation agreement, but apparently did not separate").

But this more anecdotal approach to defining the term is subject to criticism as well because it would necessarily derive its conclusion from the particular case facts presented on appeal, even though those facts were never explicitly stated as being important to the holdings. In other words, just reviewing the caselaw still leaves open whether the term's interpretation might have been changed if different facts were presented.

Expanding to other authority is also not particularly helpful. David cites *In re Marriage of Wood*, Case No. 97,123, 2007 WL 3146693 (Kan. App. 2007) (unpublished opinion), *rev. denied* 286 Kan. 1178 (2008), and Short, Settlement Agreements, Practitioner's Guide to Kansas Family Law § 8.1 (Mann, 2d ed. 2010). But neither is entirely persuasive, although some language in each supports David's position.

In *In re Marriage of Wood*, married spouses executed a limited contract— not in contemplation of divorce—that gave the husband sole ownership of property the couple had purchased with the husband's premarital funds in the event of divorce. The couple's remaining assets were not governed by any contract. The wife filed for divorce several years later seeking an equal property division, including the land subject to the postmarital agreement. The trial court awarded the husband title to the land and the purchase price based on the agreement, but it held the agreement did not address how to allocate that property's appreciated

18

value. And since the couple's remaining assets were not governed by any agreement, the court entered what it considered to be a just and reasonable property division under K.S.A. 60-1610(b)(1) by granting the wife an interest in the subject property's appreciated value. The husband appealed, arguing the trial court misconstrued the agreement and erred by including the appreciated value when making a just and reasonable property division under K.S.A. 60-1610(b)(1). The husband lost both claims on appeal. *In re Marriage of Wood*, 2007 WL 3146693, at *7 ("[T]he trial court correctly interpreted the postnuptial agreement of the parties and divided their property in a just and reasonable manner.").

The issue in *In re Marriage of Wood* was whether the property awarded under the postnuptial agreement should be considered when dividing the couple's remaining assets under K.S.A. 60-1610(b)(1). But the panel's standard of review focused oddly on K.S.A. 60-1610(b)(3), stating:

> "The standards of review in this case are those involving the interpretation of the provisions of a postnuptial agreement as well as a judgment adjusting the property rights of parties involved in a divorce action.

> "We must view the postnuptial agreement as we are taught by Short, Settlement Agreements, Practitioner's Guide to Kansas Family Law § 8.1 (Kan. Bar Ass'n [1997 edition]) that

> "'any postnuptial agreement . . . which is presented for judicial approval in a divorce or separate maintenance action will be treated as a separation agreement and tested for "valid, just and equitable" characteristics, even though the agreement was entered into many years earlier and long before any actual separation.'" *In re Marriage of Wood*, 2007 WL 3146693, at *4.

19

And while this language certainly supports David's argument, it is not at all clear why the panel mentioned it because the parties were not disputing the agreement's validity. So at best, the K.S.A. 60-1610(b)(3) discussion is dicta. At worst, the panel's analysis is fundamentally flawed by confusing K.S.A. 60-1610(b)(3)'s separation agreement requirements with review of a district court's property division authority under K.S.A. 60-1610(b)(1) in the absence of an agreement. In addition, reliance on the Practioner's Guide to Kansas Family Law § 8.1 is also subject to criticism because in its introductory section on settlement agreements, it states:

> "Some marital settlement agreements are executed after the parties have married but before any divorce action has been filed, in the hope that the parties will never divorce.

> "Thus, a postnuptial agreement (indeed, any agreement between spouses) presented for judicial approval in a divorce action will be treated as a separation agreement and tested for 'valid, just and equitable' characteristics, even though the agreement was entered into many years earlier and long before any actual separation." Short, Practioner's Guide to Kansas Family Law § 8.1.1.

These statements are made without citation to any authority and are not revisited in the chapter's substantive portions on settlement agreements. So while this comment provides David with some secondary authority, it too is easily criticized as offering no analysis to support its conclusion and again leaves us with little to work from.

Turning then to the panel's rationale, it based its conclusion on the perceived need to subject postmarital agreements entered when the parties intend to remain married to a higher scrutiny than agreements entered when the parties

20

intend to divorce. *Marriage of Traster*, 48 Kan. App. 2d at 365-66. But the panel did not conduct a statutory interpretation analysis to determine what the legislature intended the undefined term "separation agreement" to mean. Instead, it simply decided that a postnuptial agreement entered under such circumstances would not qualify as a separation agreement under K.S.A. 60-1610(b)(3) "because the statute governing separation agreements is part of the Kansas statutory scheme controlling dissolution of marriage." 48 Kan. App. 2d at 366. It then relied on a secondary source, citing 2 Elrod & Buchele, Kansas Law and Practice:  Kansas Family Law § 11.1, p. 93 (1999) (A separation agreement is "'a contract entered into by a married couple *in contemplation of* annulment, separate maintenance or divorce.'" [Emphasis added.]) 48 Kan. App. 2d at 366-67.

But this secondary source is not as persuasive as the panel lets on. For example, it states: "What distinguishes a separation agreement from a 'postnuptial contract' is that a separation agreement contemplates an end of the marriage while a postnuptial contract is merely any contract entered into after marriage." 2 Elrod & Buchele, Kansas Law and Practice: Kansas Family Law § 11.1, p. 94 (citing *Relihan v. Relihan*, 157 Kan. 249, 139 P.2d 385 [1943]). *Relihan,* however, was distinguishing prenuptial agreements from postnuptial agreements and did not address whether there was more than one category of postnuptial agreement. In addition, it predates K.S.A. 60-1610's enactment, so the *Relihan* court was simply reviewing a postnuptial agreement under the common-law rule. 157 Kan. at 250-51. We fail to discern how *Relihan* supports the cited proposition.

Accordingly, we face a difficult issue of statutory interpretation with no particularly persuasive guidance regarding intent—a circumstance suggesting this matter is ripe for legislative clarification. But in that absence, we hold the better statutory interpretation is to include all agreements entered during marriage that

21

provide for a spouse's property rights in the event of divorce or separation within the meaning of "separation agreement" as that term is used in K.S.A. 60-1610(b)(3), regardless of whether the parties' intend to remain married at the time of execution. The proximity between when the agreement is executed and the divorce does not control. As compared to the panel's interpretation, ours is more consistent with the common law, which subjected all postnuptial agreements to the same scrutiny, straightforward, and easier to apply. For these reasons, we affirm the district court's ruling that the Trasters' 2004 agreement was a separation agreement under K.S.A. 60-1610(b)(3).

With this much decided, we must determine next whether the district court erred when it did not divide the Trasters' property according to their agreement. We hold that the district court erred when it invalidated the 2004 agreement as violative of public policy and remand for reconsideration of whether the agreement is just and equitable under K.S.A. 60-1610(b)(3).

DOES THE AGREEMENT SATISFY STATUTORY REQUIREMENTS?

K.S.A. 60-1610(b)(3) provides that a separation agreement be "valid, just and equitable" before a district court incorporates its terms into a divorce decree. This necessitates the district court making two independent determinations. First, the agreement must be a valid contract. This encompasses traditional contract requirements, such as a lack of fraud and public policy considerations. Second, the agreement must be just and equitable. This encompasses whether the terms provide an acceptable or fair property division under the particular circumstances.

The district court invalidated the Trasters' agreement on both grounds. It held the agreement invalid or void as against public policy, relying on caselaw

22

involving a prenuptial agreement that was not subject to review under K.S.A. 60-1610(b)(3). The district court determined the agreement provided David with a substantial financial incentive to divorce as early as possible due to the disproportionate asset division. And based on those same considerations, it also held the contract was unreasonable and inequitable. We examine both holdings.

*The Trasters' agreement is not void as against public policy*.

### *Standard of Review*

This court recently recited the standard of review for evaluating whether a contract is unenforceable because it violates public policy in *Frazier v. Goudschaal*, 296 Kan. 730, 748, 295 P.3d 542 (2013). We stated:

> """[T]he interpretation and legal effect of written instruments are matters of law, [citation omitted], and our standard of review is unlimited on a question of law. [Citation omitted.]" [Citation omitted.] "Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect." [Citation omitted.].' [Citation omitted.]" 296 Kan. at 748.

> "'Public policy forbids enforcement of an illegal or immoral contract, but it equally insists that those contracts which are lawful and which contravene none of its rules shall be enforced, and that they shall not be set aside or held to be invalid on a suspicion of illegality. A contract is not void as against public policy unless injurious to the interests of the public or contravenes some established interest of society [citation omitted]. Illegality from the standpoint of public policy depends upon the facts and circumstances of a particular case [citation omitted], and it is the duty of courts to sustain the legality of contracts where possible [citation omitted]. There is no presumption that a contract is illegal, and

23

the burden of showing the wrong is upon him who seeks to deny his obligation thereunder. The presumption is in favor of innocence and the taint of wrong is a matter of defense [citations omitted].'" *Frazier*, 296 Kan. at 749 (quoting *In re Estate of Shirk*, 186 Kan. 311, 326, 350 P.2d 1 [1960]).

*Analysis*

Separation agreements are subject to the same rules of law applicable to other contracts. *Drummond v. Drummond*, 209 Kan. 86, 91, 495 P.2d 994 (1972). It has long been held that contracts, including those governing property settlement rights in a divorce, are to be liberally interpreted to carry out the intention of the persons making them. *Ranney*, 219 Kan. at 431; *Dunsworth v. Dunsworth*, 148 Kan. 347, 352, 81 P.2d 9 (1938).

There are a number of requirements for a valid contract, but the rule relevant to this appeal is that "[c]ontracts in contravention of public policy are void and unenforceable." *Petty v. City of El Dorado*, 270 Kan. 847, 854, 19 P.3d 167 (2001). An agreement violates public policy if it is "'injurious to the interests of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety.'" *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 548, 44 P.3d 364 (2002) (quoting *Hunter v. American Rentals*, 189 Kan. 615, 618, 371 P.2d 131 [1962]). As to marital agreements, this court has recited a more tailored policy statement:

> "1. The general rule in this state is that contracts, made either before or after marriage, the purpose of which is to fix property rights between a husband and wife, are to be liberally interpreted to carry out the intentions of the makers, and to uphold such contracts where they are fairly and understandingly made, are just and equitable in their provisions and are not obtained by fraud or overreaching.

24

*Generally speaking, such contracts are not against public policy, although a different rule obtains where the terms of the contract encourage a separation of the parties.*

"2. Public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together and to prevent separation." (Emphasis added.) *Ranney*, 219 Kan. 428, Syl. ¶¶ 1, 2.

Both the district court and the panel recited this public policy statement but disagreed whether the Trasters' agreement promoted or encouraged divorce. And in doing so, each lower court applied different common-law rules emerging from the same public policy statement to reach opposing outcomes.

The panel relied on caselaw that has held the parties' agreement cannot contain a provision in which they agree to file for divorce or agree not to contest a divorce. See *In re Estate of Cooper*, 195 Kan. 174, 180, 403 P.2d 984 (1965) (postnuptial property settlement agreement void as against public policy because husband was required to file for divorce as soon as the agreement was signed and the contract prohibited wife from contesting the divorce). The district court, on the other hand, relied on Kansas cases that voided contracts on public policy grounds because the property division was deemed to have created a financial incentive to file for divorce. See *Ranney*, 219 Kan. at 432 (prenuptial agreement invalid because property division so favored husband that he "tended to gain by bringing about a separation" because he would retain all property acquired during the marriage and the wife could not make any claim against him for support); see also *Fincham v. Fincham*, 160 Kan. 683, 687-88, 165 P.2d 209 (1946) (settlement provision invited and encouraged separation as a source of pecuniary profit for husband).

25

The contrast in these approaches presents an obvious question about what the common law has required. We focus on the common-law rule applied in *Ranney* because that is the rule the district court applied to void the Trasters' agreement. In *Ranney*, the wife sought to invalidate a prenuptial agreement in a later divorce proceeding because the property division greatly favored the husband. Framing the inquiry as whether the contract was void because it tended to invite or encourage divorce, a majority of the court held the wife was not encouraged to seek divorce because she would lose all right to support and maintenance. But the husband "tended to gain by bringing about a separation" because he would lose nothing except his right in the marital home, furnishings, and car. The husband would retain all property acquired during the marriage, and the wife could not make any claim against him for support. 219 Kan. at 432. So based on the limited assets allocated to the wife, the court concluded the agreement was "unfair, inequitable, contrary to public policy and unenforceable." 219 Kan. at 433.

The inequitable property division in *Ranney* is similar to the Trasters' agreement, but there are important differences. As the panel correctly pointed out, the Trasters' 2004 agreement essentially reiterated a similar one made in the 1980's. And since David did not file for divorce until decades after first agreeing to the distinctly disproportionate property division, the panel reasoned the agreement could not have created too great of an incentive for divorce. 48 Kan. App. 2d at 362-63. In addition, the panel focused on the express statements that the parties intended to stay married and recited specific justifications for the unequal distribution by acknowledging Debra's parents provided "'nearly all'" the couple's existing assets with the intent that Debra continue to benefit from them. 48 Kan. App. 2d at 363. And to these observations we would add that the

agreement more clearly provides David with a financial incentive to remain married because he would continue to enjoy use of those assets.

Standing alone, these distinctions are probably sufficient to merit a different outcome than the one the district court found, but we are faced with an even more fundamental distinction. The agreement in *Ranney* was a prenuptial agreement, not a separation agreement subject to review under K.S.A. 60-1610(b)(3). So the public policy inquiry the district court engaged in, which focused on the nature of the agreement's property division, duplicated the analysis undertaken when reviewing whether a separation agreement is "just and equitable" under the statute's second prong. Since the common law exists only when there is no statutory law, it is problematic to continue undertaking—as the district court did—this specific public policy analysis when reviewing separation agreements under K.S.A. 60-1610(b)(3). *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 663, 876 P.2d 1362 (1994) ("[T]he common law exists only where there is no statutory law. It is the law of necessity."). Once the legislature has spoken, the legislative statement supersedes the common law. See K.S.A. 77-109; *U.S.D. No. 501 v. Baker*, 269 Kan. 239, 243, 6 P.3d 848 (2000).

We hold that the public policy inquiry into whether the property division in a separation agreement tends to "invite and encourage" divorce was abrogated when the legislature enacted K.S.A. 60-1610(b)(3) and specified such agreements must be "just and equitable." District courts tasked with reviewing separation agreements should examine property distribution under the legislature's chosen "just and equitable" standard, rather than trying to figure out whether that distribution is a springboard to divorce or separation. The public policy analysis undertaken in *Ranney* examining whether the property division was so favorable

27

to one party that it "encouraged" separation or divorce is disavowed in the context of separation agreements governed by K.S.A. 60-1610(b)(3)'s second prong.

We hold that the district court erred as a matter of law when it determined the Trasters' agreement was void as against public policy under the rationale that it gave David a substantial financial incentive to file for divorce.

IS REMAND NECESSARY FOR THE "JUST AND EQUITABLE" ANALYSIS?

The district court also held the Trasters' agreement did not satisfy K.S.A. 60-1610(b)(3)'s "just and equitable" requirement because "virtually everything acquired during the marriage through gift, inheritance and the joint effort of the parties would go to Debra." The panel did not address this analysis because it concluded the agreement was not subject to K.S.A. 60-1610(b)(3)'s standards. Since we have determined the panel erred in that regard, we consider next this aspect of the district court's ruling.

*Standard of Review*

This court has not established a standard for reviewing whether a separation agreement is "just and equitable." The Court of Appeals has applied the following standard:

> "When a separation agreement is submitted for court approval, the trial judge is given broad discretion to determine its fairness. [Citation omitted.] Thus, we review the fairness decision for abuse of discretion." *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 406, 166 P.3d 440, *rev. denied* 285 Kan. 1174 (2007).

28

We agree this is the appropriate standard of review. A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the judge; (2) a ruling is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) substantial competent evidence does not support a finding of fact on which the exercise of discretion is based. *State v. Bowen*, 299 Kan. 339, 348-49, 323 P.3d 853 (2014). We have also indicated an adequate record must exist for an appellate court to determine whether a district court abused its discretion. Without such a record, the appellate court may remand for additional findings. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013).

*Analysis*

The district court did little, if anything, to analyze the Trasters' agreement in this regard other than to simply focus on its public policy conclusion, which we have held to be in error. The court first recited the fact that the property division meant that "David would receive 1.13% and Debra would receive 98.87% of the marital estate." It then stated, without any additional analysis, that "[i]n light of the additional evidence submitted at trial the court finds that this postnuptial is unreasonable and inequitable." This statement was footnoted that even assuming a lesser disparity, the agreement was still unreasonable and inequitable.

We hold this determination was guided by several errors of law and suffers from an insufficient factual analysis to permit adequate appellate review. A district court must consider more than the resulting property division at the time of divorce when analyzing whether a separation agreement is just and equitable under K.S.A. 60-1610(b)(3).

29

The district court focused only on the present day property division and gave no stated consideration to the Trasters' explicit reasons for that division, *i.e.*, Debra's parents being the source of the assets, Debra's medical circumstances, and the financial impact on Debra if she and David divorced. One important consideration would have been whether the reasons David and Debra gave for the one-sided property division were factually based at the time they were recited in the separation agreement; and, if so, what would be wrong with honoring those stated justifications. Similarly, the district court gave no apparent thought to the fact that these terms were voluntarily entered into or to the Trasters' express agreement that this asset division was "fair, just and reasonable" and comported "with all legal requirements so as to be fully enforceable under the laws of the State of Kansas." These considerations are important in light of our state's general rule that marital agreements are to be upheld and liberally interpreted to carry out the makers' intentions when there is a lack of fraud, no overreaching, and no other public policy impediment. *Ranney v. Ranney*, 219 Kan. 428, 431, 548 P.2d 734 (1976).

Under K.S.A. 60-1610(b)(3), the district court's task may be a complicated one to be sure. But it cannot accomplish that task without noting the circumstances important to its analysis and clearly explaining what factors may override the general rule and stating why. In this case, the district court made only general observations relating to the statute's just and equitable prong. It then jumped straight to a conclusion that the Trasters' agreement violated public policy because its terms somehow encouraged David to divorce despite being in place for more than 2 decades without having that effect. Put simply, more is required from the district court if it is to conclude under these particular circumstances that the Trasters' agreement cannot be enforced in light of the parties' freedom of contract and the general rule that such agreements should be honored.

30

In *Davis v. Miller*, 269 Kan. 732, 738, 7 P.3d 1223 (2000), this court considered a postnuptial agreement that the parties entered in conjunction with their reconciliation after the husband had filed for an earlier divorce. The issue was whether the parties could include a choice-of-law provision selecting the unconscionability standard applicable to prenuptial agreements to determine the legality of their postmarital agreement. We upheld the parties' right to bind themselves to an otherwise inapplicable statutory standard. 269 Kan. at 739. And we held the choice-of-law provision did not violate public policy.

In a similar vein, the district court needed to explain why David and Debra could not agree to the property division at issue for the reasons they explicitly embraced. As this court has previously stated, a property division need not be equal to be just and reasonable. *LaRue v. LaRue*, 216 Kan. 242, 250, 531 P.2d 84 (1975) ("Nowhere in any of our decisions is it suggested that a division of all the property of the parties must be an equal division in order to be just and reasonable . . . .").

That said, these concerns are not meant to convey that the agreement is just and equitable simply because it claims to be. See *In re Marriage of Kirk*, 24 Kan. App. 2d 31, 36, 941 P.2d 385, *rev. denied* 262 Kan. 961 (1997) (statute requires a district court to scrutinize a separation agreement before approving it); *Cook v. Cook*, 7 Kan. App. 2d 179, 184, 638 P.2d 980, *rev'd on other grounds* 231 Kan. 391, 646 P.2d 464 (1982) ("[M]ere agreement by the parties does not vitiate the court's duty to scrutinize the settlement agreement, and if the agreement is not valid, just and equitable, the court should reject or alter it."). What is required is a careful and full recitation of the facts and particular circumstances that justify the

31

district court's conclusions that the parties' intentions cannot be honored. This will in turn make those conclusions amenable to appellate review.

Having determined that the Trasters' 2004 agreement is not void as against public policy, we further conclude that the district court must do a more thorough analysis that explicitly weighs all of these considerations before it may determine that agreement is not just and equitable under K.S.A. 60-1610(b)(3). We remand the case for that purpose and whatever additional determinations that must be made once that task is completed.

ATTORNEY FEES

Our disposition moots the panel's decision that Debra was entitled to attorney fees. *In re Marriage of Traster*, 48 Kan. App. 356, 381, 291 P.3d 494 (2012). But it also reverses the district court's ruling that the Trasters' agreement—including the attorney fee provision—was void on public policy grounds.

If the district court determines on remand that the Trasters' agreement is to be incorporated into the divorce decree under K.S.A. 60-1610(b)(3), the indemnity provision will require the assessment of attorney fees. We further note there may be additional arguments under the separation agreement's severability clause that the indemnity provisions survive even if the agreement is determined not to be just and equitable. We express no opinion on this, other than to note the possibility that this may be an issue on remand.

The Court of Appeals decision is affirmed in part and reversed in part. The district court's judgment is affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.

32

BEIER, J., not participating.

DAVID R. PLATT, District Judge, assigned.[1]

MICHAEL J. MALONE, Senior Judge, assigned.[2]

\* \* \*

ROSEN, J., concurring in part and dissenting in part: I agree with the majority's well-reasoned opinion up to the point where it finds that remand is necessary for a determination of whether the Trasters' agreement was just and equitable. I would find, as did the Court of Appeals, that the agreement is valid and enforceable. Specifically, the Court of Appeals found:

"[T]he parties had been married approximately 28 years. Although property division under the agreement was not an even split, the agreement explained that Debra would receive a substantial portion of the parties' assets in the event of a voluntary dissolution of the marriage because nearly all of the parties' assets had been contributed by Debra's parents and because Debra would have a limited ability to obtain gainful employment and no social security benefits. Conversely, David practiced law in association with one of the largest and most prestigious law firms in Kansas and had a steady stream of income for the foreseeable future. Despite the disparity in property division between the parties, the agreement specifically acknowledged that its terms were fair and reasonable, that David voluntarily entered into the agreement, and that he had received full disclosure of Debra's property and assets. Under these circumstances, we find David and Debra's

[1]**REPORTER'S NOTE:** District Judge Platt was appointed to hear case No. 106,092 vice Justice Beier pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

[2]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No.106,092 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.

agreement was fair and reasonable at the time it was executed." *In re Marriage of Traster*, 48 Kan. App. 2d 356, 378, 291 P.3d 494 (2012).

Further, in analyzing the Trasters' agreement, the rule that the terms of written instruments generally are construed against the scrivener cannot be ignored. See *T.R., Inc. of Ashland v. Brandon*, 32 Kan. App. 2d 649, 654, 87 P.3d 331 (2004). Again, as the Court of Appeals astutely points out:

"The terms of the agreement in this case readily establish that David knew he was entitled to have the court divide the marital assets in the event of divorce but—for a myriad of reasons expressly stated in the agreement itself—he wanted to relinquish that right. Again, David drafted the agreement himself, which necessarily precludes any argument that David lacked adequate time to review the agreement or that he did not understand its terms. The terms of the agreement itself state that David understood the rights, obligations, and legal consequences arising out of it. Finally, the fact that David was a practicing attorney is strong evidence that David knew he was entitled to have the court divide the marital assets in the event of divorce." 48 Kan. App. 2d at 377.

Here, since David was the scrivener and legal expert in the formation of the agreement which undoubtedly enticed Debra's execution, he should not be able to repudiate his own contract when it suits him. For these reasons, I would find the agreement to be just and equitable and reverse the district court. Also, in light of finding that the postmarital agreement is enforceable, I would also find the indemnity provision contemplating attorney fees must also be enforced against David.

JOHNSON, J., joins in the foregoing concurring and dissenting opinion.