NOT DESIGNATED FOR PUBLICATION

No. 127,685

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FIRST NATIONAL BANK OF OMAHA,
*Appellee*,

v.

JAMES R. LUCAS,
*Appellant*,

v.

PAMELA K. LUCAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JOHN B. MCENTEE, magistrate judge, and RALPH E. LEWIS, judge pro tem. Submitted without oral argument. Opinion filed December 6, 2024. Affirmed.

*James Lucas*, appellant pro se.

*Kirk E. Brumbaugh*, of BQ & Associates, PC, LLO, of Omaha, Nebraska, for appellee First National Bank of Omaha.

No appearance by appellee Pamela K. Lucas.

Before SCHROEDER, P.J., MALONE and BRUNS, JJ.

PER CURIAM:  James R. Lucas appeals the district court's summary judgment rulings for the First National Bank of Omaha (Bank) and his ex-wife, Pamela Lucas. Highly summarized, during their marriage, James and Pamela had a joint credit card

through the Bank. Yet, when granting the Bank's and Pamela's respective summary judgment motions, the district court found that James was solely responsible for paying the $20,258.11 of credit card debt. After thoroughly reviewing the record and the parties' arguments on appeal, we find no error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

James and Pamela were married from June 10, 1971, until August 16, 2019. During their marriage, James and Pamela had a joint credit card through the Bank for nearly 30 years. When James and Pamela divorced, they entered a settlement agreement, which the district court approved and incorporated into their divorce decree. Although it is unclear why the credit card from the Bank was never directly discussed in the agreement, the agreement had a general provision about dividing debts. It stated that James would "be solely responsible for . . . and will indemnify and hold [Pamela] harmless from . . . [a]ny debt incurred by him since the filing of the Petition for Divorce (January 3, 2017)." This court affirmed the district court's finding that the settlement agreement was just and equitable. *In re Marriage of Lucas*, No. 122,204, 2021 WL 1045186, at *8 (Kan. App. 2021) (unpublished opinion).

After the divorce, James used the credit card. By July 2020, the unpaid balance on the credit card was $20,258.11. On October 6, 2020, the Bank sued James for $20,258.11, plus costs for breaching the credit card agreement with the Bank. James, acting pro se, answered the petition by arguing that the Bank should sue Pamela too. He explained how both their names "were shown on all credit card statements, notices, etc., from the initial extension of credit a great many years ago through March 31, 2020." Thus, he argued that the debt should be divided between them.

Ultimately, the district court allowed James to file a third-party petition against Pamela. In this petition, James stressed that the Bank removed Pamela's name from the

2

account associated with the credit card in May 2020. James asserted that he never requested Pamela's removal from the credit card account, which meant that the Bank included "a false document in its discovery responses." He also discussed the terms of the divorce settlement agreement. Essentially, he asserted that Pamela's conduct during the divorce and the terms of their settlement agreement forced him to rely on the credit card: "Actions taken by Ms. Lucas led to the charges made against the [Bank's] credit card, along with many other enormous and unnecessary costs." He admitted the following: "[A]t the time that Ms. Lucas filed for divorce on January 3, 2017, neither she nor [James] had any outstanding and/or overdue balances on the [Bank's] credit card . . . ."

On May 12, 2023, the Bank moved for summary judgment, arguing there were no genuine issues of material facts about whether James owed it $20,258.11 in credit card debt. On May 24, 2023, Pamela moved for summary judgment for the same reason. James also had previously moved for summary judgment.

The district court heard the Bank's motion for summary judgment on September 8, 2023, although a transcript is not included in the record. The district court's journal entry explains that it granted the Bank's summary judgment motion because there were no genuine issues of material fact about whether James owed the Bank $20,258.11, as well as costs from the current litigation. In reaching this ruling, the district court reviewed the exhibits attached to the Bank's summary judgment motion. In his responses to the Bank's requests for admission, James admitted the following:  (1) that he had entered into a credit card contract with the Bank; (2) that the Bank mailed him the credit card "invoices and/or statements"; (3) that he promised to pay the Bank for purchases made with the credit card; and (4) that the outstanding balance on the credit card was currently $20,258.11.

The district court heard Pamela's motion for summary judgment on October 26, 2023. At the hearing, Pamela stressed that under their divorce settlement agreement,

3

James was supposed to pay the debt he incurred after he filed the divorce petition on January 3, 2017. Pamela argued that James incurred all the disputed credit card debt following January 3, 2017, so she was not responsible for any of the debt. James responded by repeating his argument that Pamela should pay part of the debt because her name was listed on the account until May 2020. The district court explained that Pamela's evidence showed that in early spring 2018, the credit card had no outstanding balance. The judge directly asked James whether he had any evidence that Pamela made any charges on the credit card resulting in the $20,258.11 balance. James said, "No, sir." The district court then granted Pamela's summary judgment motion, finding that "any possible claims [James] might have against [Pamela were] barred by the divorce decree . . . ."

James moved for reconsideration which the district court denied. James timely appealed the district court's judgment. Pamela initially cross-appealed but later dismissed her appeal. Additional facts are considered below.

ANALYSIS

On appeal, James argues that the district court improperly granted summary judgment for both Pamela and the Bank. Pamela has not filed a brief on appeal. The Bank asserts that the district court properly granted summary judgment because there were no genuine issues of material fact, and it was entitled to judgment as a matter of law.

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive

4

issues in the case. On appeal, we apply the same rules[,] and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Stechschulte v. Jennings*, 297 Kan. 2, 14, 298 P.3d 1083 (2013).

James has represented himself in district court and on appeal. Courts construe pleadings of pro se litigants' liberally so that their substance controls over their labels. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022). Yet, "the pro se liberal construction rule does not mean that pro se litigants can ignore procedural requirements." 61 Kan. App. 2d at 498. "'A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se.'" 61 Kan. App. 2d at 498.

Although James divides his brief into five arguments, he essentially argues that this court should reverse the district court's summary judgment rulings for two reasons. First, he argues that the Bank's summary judgment motion and Pamela's summary judgment motions were untimely under K.S.A. 2023 Supp. 60-256(c)(1)(A). Second, he argues that whether he was the sole obligor on the credit card remained a genuine issue of material fact because the Bank never produced his and Pamela's credit card application or their credit card agreement as ordered by the district court. James' other arguments address the district court's denial of his "Motion for Reconsideration and Alteration of the Judgment Dismissing His Motion For Summary Judgment." He claims the district court's findings of fact and conclusions of law supporting the denial of his motion were inadequate. He also complains about how long it took the district court to deny his motion.

The Bank responds that it timely moved for summary judgment under K.S.A. 2023 Supp. 60-256(c)(1)(A). It asserts that James' arguments ignore caselaw holding that proof that a cardholder used the credit card is sufficient evidence that the cardholder is an obligor. The Bank argues that the district court's rulings had "all of the required elements

of fact and law as applied to the claims against [James]," and thus were adequate. Lastly, the Bank questions whether James has provided this court with an adequate record on appeal to consider his allegation of error.

To begin, James' assertion that the Bank's and Pamela's summary judgment motions were untimely rely on his errant application and interpretation of K.S.A. 2023 Supp. 60-256(c)(1)(A). This provision states that unless the district court orders otherwise, "[a] party may move for summary judgment at any time until 30 days after the close of all discovery." K.S.A. 2023 Supp. 60-256(c)(1)(A). James argues that the Bank moved for summary judgment 784 days after discovery closed. Similarly, he argues that Pamela moved for summary judgment about two years after discovery closed. Yet nothing in the record establishes that the district court ever closed discovery. It appears that James' untimeliness arguments hinge on his belief that discovery ended on February 18, 2021—the day he filed a notice with the district court that he had served the Bank with his interrogatories, requests for admissions, and request for production of documents. But the record does not reflect any order establishing that discovery closed on that date. Indeed, Pamela was not even a party in this lawsuit as of February 18, 2021. Thus, neither the Bank's nor Pamela's summary judgment motions were untimely under K.S.A. 2023 Supp. 60-256(c)(1)(A)'s plain language.

Next, as stressed by the Bank, persuasive authority undermines James' argument that a genuine issue of material fact existed. James argues that because the Bank never produced a copy of his credit card application or credit card agreement, the Bank could not establish whether he was the sole obligor for the credit card debt. James stresses that the district court ordered the Bank to give him the application and agreement. As for Pamela's liability, James argues that his separation agreement with her does not affect whether she is also responsible for the outstanding credit card debt.

6

James' argument is refuted by the record. When the Bank moved for summary judgment, it attached supporting documents including affidavits and James' responses to the Bank's request for admission. A legal analyst for the Bank explained in her affidavit that "[a]n original Contract, signed in blue ink, does not exist." She stated that instead, once the Bank accepts an individual's credit card application, "the individual received the credit card with terms of conditions." She stated that the Bank considers a person's credit card use "acceptance of the credit card relationship and of the credit card terms and conditions." James' complaint about the Bank never providing him a copy of his credit card application or credit card agreement ignores that the Bank explained to the district court why it was unable to give James these documents when it moved for summary judgment. And in the Bank's request for admissions, James admitted that he had a credit card through the Bank, that he promised to pay the Bank any outstanding debts associated with the credit card, and that the current credit card balance was $20,258.11.

In *Citibank v. Gumb*, No. 98,534, 2008 WL 1722286, at *3 (Kan. App. 2008) (unpublished opinion), this court affirmed the district court's decision granting Citibank's summary judgment motion despite the Gumbs' argument that Citibank must provide their original signed credit card agreement to establish that they must pay the disputed credit card debt. The *Citibank* panel held that Citibank's production of the Gumbs' credit card bills established that the Gumbs had used the credit card. This court held that the Gumbs' use of the credit card "provided adequate proof of the existence of an agreement." 2008 WL 1722286, at *3.

Several years later, in *Portfolio Recovery Associates v. Witschorke*, No. 110,163, 2014 WL 1508682, at *1 (Kan. App. 2014) (unpublished opinion), this court relied on the *Citibank* decision to affirm the district court's rejection of Witschorke's argument that he was not responsible for his outstanding credit card debt because "the material terms and conditions of the credit card agreements were never memorialized in writing and signed by both parties as required by Kansas statute." 2014 WL 1508682, at *1. This court found

7

that Witschorke's admission to using the credit card and incurring the disputed debt could prove that an agreement requiring Witschorke to pay the debt existed. 2014 WL 1508682, at *3. Both the *Portfolio Recovery* and *Citibank* decisions support the proposition that a bank may recover credit card debt from a cardholder without producing an original credit card application or a credit card agreement.

Turning to James' argument about his and Pamela's separation agreement, James asserts that the district court should not have considered the agreement when determining whether she was responsible for any of the credit card debt. But separation agreements are contracts that courts should liberally construe to carry out the intention of the parties entering the agreements. *In re Marriage of Traster*, 301 Kan. 88, 105, 339 P.3d 778 (2014). James' and Pamela's separation agreement clearly stated that he would be solely responsible for, indemnify, and hold Pamela harmless for debts he incurred after January 3, 2017. James acknowledged in open court that he incurred all the debt after January 3, 2017. Thus, the district court could rely on the clear language of the separation agreement and James' undisputed admission to rule that James was solely responsible for the debt that he accrued on the credit card.

As for James' remaining arguments, the only motion that he discusses is his motion for reconsideration and alteration of *his* summary judgment motion. He is not challenging the district court's denial of his motion to reconsider its summary judgment rulings for the Bank and Pamela. Rather, he is relying on Kansas Supreme Court Rule 166(a) (2024 Kan. S. Ct. at 232), and James complains that it took the district court 707 days to rule on his motion. He also argues that the district court's ruling contains inadequate findings of fact and conclusions of law.

Kansas Supreme Court Rule 166(a) states that a "judge of the district court must issue a ruling on a civil motion no later than 30 days after the motion's final submission except for a ruling on a motion for summary judgment, which must be issued no later

8

than 60 days after final submission." Kansas Supreme Court Rule 141(g) (2024 Kan. S. Ct. R. at 221) requires the district court to make specific and separate findings of fact and conclusion of law. And Kansas Supreme Court Rule 165(a) (2024 Kan. S. Ct. R. at 232) requires the district court to state its fact findings and legal conclusions in accordance with K.S.A. 2023 Supp. 60-252(a), which states that the district court must make specific and separate findings of fact and legal conclusions.

Even if we assume that the district court violated these rules in denying James' motion for reconsideration and alteration of his summary judgment motion, James' arguments about the district court's belated denial and inadequate finding are unpersuasive. Because the district court granted the Bank's and Pamela's summary judgment motions, it implicitly rejected James' motion. And James' arguments on appeal are the same arguments the district court rejected in granting summary judgment for the Bank and Pamela. The district court correctly found that the Bank could recover summary judgment without producing the original credit card application and credit card agreement. The district court also correctly found that it could rely on the separation agreement between James and Pamela in finding that Pamela was not liable for the credit card debt incurred solely by James after the divorce petition was filed. Thus, we find no merit in James' remaining arguments that we should reverse the district court's decisions granting the Bank's and Pamela's motions for summary judgment.

Affirmed.