(87 P.3d 331)

No. 90,469

T.R. INCORPORATED OF ASHLAND, KANSAS, *Appellant/Cross-appellee*, v. MARY BELLE BRANDON, JEAN S. STEPHENS, JOHN E. STEPHENS II, MARGIE L. STEPHENS, DONALD D. STEPHENS, SUSAN K. WILLARD/SHEFFIELD, and JIM D. WILLARD, *Appellees/Cross-appellants*.

Opinion filed April 2, 2004.

*Charles H. Herd*, of Greensburg, for the appellant/cross-appellee.

*Alan C. Goering*, of Goering and Slinkard, of Medicine Lodge, for the appellees/cross-appellants.

Before PIERRON, P.J., LEWIS and JOHNSON, JJ.

LEWIS, J.: Appellant T.R. Incorporated of Ashland, Kansas, entered into a lease agreement with Mary Belle Brandon and others. The lease involved 3,697 acres of ranch and farmland. Although the parties had a written lease, they cannot agree on the proper construction of that lease. As a result, appellant filed this action against appellees concerning payments it claimed were due under the lease. The trial court held for appellees, and this appeal followed.

Basically, the lease granted appellant the right to produce and harvest wheat in 1999, 2000, and 2001. It included the right to receive government wheat payments for those years. The lease also gave appellant the right to receive government feed grain payments for 1998 through 2001. One of the essential disputes between the parties involves the wheat crop of 2002.

Prior to the signing of the lease, the parties discussed plans to plant alfalfa. Alfalfa is a perennial legume crop which has a production life of 6 to 15 years. Appellant wanted a 5-year lease, but accepted a 3-year lease after receiving assurance from appellees that the lease would be extended if appellant was a good tenant. That also is a point of contention in this lawsuit. Appellant planted and established a good stand of alfalfa on 123 acres. Appellant planted the alfalfa in the summer of 1998 and received 2 crop years of alfalfa, 1999 and 2000.

On February 28, 2001, appellees terminated the lease with appellant effective May 1, 2001. Appellant did not receive any of the 2001 alfalfa crop. Appellant sprayed the alfalfa crop in April 2001 and did not receive any compensation for this action.

John E. Stephens II, appellees' agent and one of the landowners, took over as a new tenant on the ground on May 1, 2001, after terminating appellant's lease. Appellant was not allowed to plant a wheat crop for 2002 and did not receive the 2002 government wheat payments or any share of the 2002 wheat crop.

Appellant did not receive the 1998 government feed grain payments as they were received by the prior tenant. Appellant did receive the 2001 government feed grain payments, but the trial

court ruled that appellees were entitled to the 2001 payments and ordered appellant to reimburse them for that amount.

In addition, the parties disagree on the pasture rented to appellant. At the time the lease was terminated, appellant had 280 cows on the property, 120 of which had been purchased specifically because of the lease in question.

As a result of the termination of the lease, appellant had no place to put his herd of cattle and asked appellees for a short-term pasture arrangement to avoid forced liquidation of the cattle. The parties agreed to a 6-month pasture lease for 120 head of cattle. Although the lease identified the leased area as the "north pasture," both parties verbally understood that the area was approximately 1,000 acres. Instead, appellant received only 653 acres.

Without notice to appellees, appellant removed his cattle without paying $7,200, the second half of the pasture lease payment. Appellees filed a lien to recover the money owed, which was deposited by appellant with the clerk of the district court.

Appellant appeals the trial court's judgment reforming the lease agreement and appeals the trial court's judgment denying compensation for the alfalfa crop. Appellees cross-appeal the trial court's decision to abate part of the pasture rent.

We begin our effort to untangle the mess the parties have gotten into by examining our standard of review:

"The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998)." *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

Where the district court has made findings of fact, the appellate court's function is to determine whether the district court's findings are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Unrau*, 271 Kan. at 747. Conclusions of law are subject to

unlimited appellate review. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

Perhaps the most contentious area in this action is who was entitled to the 2002 crop proceeds and government feed grain payments. The trial court interpreted the lease as giving the 2002 crop proceeds and the government feed grain payments to appellees.

If the language of a written lease is clear and can be carried out as written, there is no room for rules of construction. *KPERS v. Russell*, 269 Kan. 228, 236, 5 P.3d 525 (2000). Where contract terms are plain and unambiguous, the intention of the parties and the meaning of the contract are determined from the contract itself. *Gray v. Manhattan Med. Center, Inc.*, 28 Kan. App. 2d 572, 580, 18 P.3d 291 (2001).

The lease provides that it is for a period of "three (3) years commencing with May 1, 1998, and ending on April 30, 2001."

The primary issue between the parties is the meaning of Paragraph 4 of the lease agreement. That paragraph is rather inartfully written and depending upon which way one wishes to examine it could support the position of either party. Paragraph 4 provides that appellant is

*"entitled to full ownership of all the wheat crop for the year of 1999 through 2002, together with the wheat certificates [accruing] thereon, although this lease will expire on April 30, 2001;* Second parties shall be entitled to full ownership of the wheat certificates [accruing] by virtue of the crop of 2001. Second parties shall be entitled to harvest and have possession of the 2001 wheat harvest crop." (Emphasis added.)

The literal interpretation of Paragraph 4 would give appellant a 2002 wheat crop on a lease which expired April 30, 2001. This, in essence, means that appellant would receive the wheat crop without having planted it, worked the ground for it, harvested it, or having anything to do with the production of said wheat crop.

Appellant places its reliance on the emphasized portion of Paragraph 4 set forth above. On the other hand, appellees argue that the 2002 date in that paragraph is an obvious typographical error because it is not in line with customary farming practices in the region. Accordingly, appellees argue the court should reform the

lease and make it clear that the tenant was entitled to all of the 2001 crop and government payments but none of the 2002 crop.

In granting summary judgment to appellees on this issue, the trial court held:

"The contract has an obvious contradiction of terms. In reviewing the document from all four corners, it is clear that the reference to 2002 in paragraph #4 is an aberration. Even when reading the remainder of paragraph #4 it makes complete sense if the 2002 contained on line 2 were changed to 2001. It does not make sense that someone would be able to exert ownership over a wheat crop for the year 2002, yet not have that year's crop specifically mentioned on lines 4, 6, and 7 of the same paragraph."

It is not our function to rewrite a contract of the parties or to change the language so that it reads the way we think it should read. However, we must examine all four corners of the instrument and analyze the language of Paragraph 4 in consideration of the entire lease and not with a critical analysis of a single or isolated provision. *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, Syl. ¶ 3, 961 P.2d 1213 (1998). Common sense and the customary farm lease in use at the time this lease was entered into would not give the tenant a right to a wheat crop planted and harvested after his lease terminated. We consider the language in Paragraph 4 to be ambiguous and confusing when examined in the light of the four corners of the instrument and in the light of customary farming practices and leases in effect at the time. We conclude, therefore, the trial court was correct in granting summary judgment to appellees and finding that it was the intent of the lease for appellant to receive the wheat payments through 2001 when the lease ended. The year 2002, we believe, was a typographical error and should be disregarded. We affirm the trial court's grant of summary judgment on this issue.

A similar problem exists with regard to the government feed grain payment as provided for in Paragraph 6 of the lease. That paragraph states:

"Second Parties shall be entitled to the feed grain certificates and other government payments therefor for the years 1998 through 2001, the period that is under the lease. Second parties will again receive the feed grain certificates and other

government payments excepting the wheat certificates as [aforesaid], commencing with May 1, 2001."

Again, this particular provision of the lease is inconsistent with common farming leases actually used at the time this lease was entered into and creates an ambiguity with regard to the balance of the lease. In holding in favor of appellees on this issue, the trial court said:

"Likewise, paragraph #6 contains an obvious mistake in that the wording of the contract indicated second party would be receiving feed grain certificates and government payments commencing May 1, 2001. Since the lease was a three-year lease and ended on April 30, 2001, these grains would not have been planted by second parties. Additionally, the payments to second parties, as listed in the last sentence of paragraph #6, would have no ending date."

We agree with the trial court's interpretation of Paragraph 6. We must determine the intent of the contract by considering the four corners of the instrument, along with the evidence supporting the intent of the written instrument.

The lease itself was prepared by appellees, all of whom are lay-people, and none of whom are attorneys. However, appellant argues that because appellees prepared the written lease, it must be construed against them. Appellant contends the trial court failed to do so and this was reversible error.

It is a point of some importance that the written lease was prepared by appellees and not by an attorney. While the general rule is that written instruments are construed against the scrivener, it is not always the case where a layman drafts a multiple-page contract. "Greater latitude is allowed in construing an instrument which is prepared by a draftsman who is a layman, or unskilled, than in a case in which the instrument is prepared by a skillful draftsman. [Citation omitted.]" *Springer v. Litsey,* 185 Kan. 531, 535, 345 P.2d 669 (1959).

While acknowledging the correctness of the statement set forth above, we must conclude that it would be simply unconscionable to give appellant the crop proceeds and the government feed grain payments after the lease was terminated since this appears to be against the intent of the parties as ascertained from the four corners of the instrument. Whether the trial court properly construed the

lease against the preparer or not, we still hold the trial court was correct in its decision to deny appellant the 2002 wheat crop and the government feed grain payment.

Appellant next employs equity in arguing it is entitled to recover the value of the perennial alfalfa crop under the doctrine of unjust enrichment. However, the trial court ruled, and we have affirmed that ruling, that the 3-year term set forth in the written lease was controlling. As a net result, appellant's equitable claim has no merit.

The question of whether one party can recover damages from another based upon the theory of unjust enrichment is a question of law, with an unlimited scope of review. See *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.,* 259 Kan. 166, 176, 910 P.2d 839 (1996).

The basic elements of a claim based upon a theory of unjust enrichment are threefold: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *Haz-Mat,* 259 Kan. at 177.

In the final analysis, the record shows that appellant bargained for a 5-year lease on the alfalfa. Appellees refused to grant it that term and granted it a 3-year term with an oral statement that it might be given an extension if it was a good tenant. It is quite obvious that there was a substantial risk to appellant in planting the alfalfa crop without a written agreement giving it the necessary years to recover its full cost and profit on that crop.

The next problem that faced the parties was what to do about the 1998 government feed grain payment. According to the lease, that payment was to be paid to appellant. However, it was in fact paid to the prior tenant of the real estate. The trial court held that appellant had no claim against appellees for this payment. It was the reasoning and theory of the trial court that appellant should make its recovery from the prior tenant. We agree.

Appellant also seeks reimbursement for spraying of the alfalfa crop for 2001. Appellant insists the trial court erred in believing

the claim was held by a separate company and not by a party to this action. However, appellant asserts that it paid the spray bill and is entitled to reimbursement. Since the claim was dismissed at pretrial, the facts showing that appellant paid for the spraying were not developed at trial.

Appellant failed to address this issue to the trial court and has therefore waived any right to appeal the court's ruling. Issues not raised before the district court cannot be raised on appeal. *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003).

We now turn our attention to the cross-appeal of appellees. Appellees cross-appeal the trial court's decision to abate some of the rent paid under the extended lease agreement.

The lease referred to the grazing area as the "north pasture." Unfortunately, the lease contains no reference as to the amount of acreage, although it was apparently agreed upon by the parties to be approximately 1,000 acres. Instead of 1,000 acres, appellant received 653 acres. The trial court found the parties had agreed that appellant was to receive approximately 1,000 acres but instead appellant received only 653 acres. There was expert testimony by a veterinarian that cows should have 10 pasture acres each during a 6-month grazing period.

Accordingly, the trial court held the one-third reduction in acreage should result in a one-third reduction of rent owed on the lease.

We see no need to go into the details of the veterinarian's testimony and only note that it clearly shows that appellant did not have sufficient acreage to sustain his 120-cow herd.

We believe that substantial competent evidence supports the trial court's findings of fact and conclusions of law. Given the admitted shortage of acreage and the number of barren cows, it was not an abuse of discretion for the trial court to exercise its equitable powers and order refunds of the pasture rent.

Accordingly, we affirm the trial court's decisions on the issues raised by appellant and on the issue raised by appellees.

Affirmed.