NOT DESIGNATED FOR PUBLICATION

No. 121,624

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
DALE RAYMOND RAMSEY.

MEMORANDUM OPINION

Appeal from Chautauqua District Court; JEFFREY D. GOSSARD, judge. Opinion filed July 2, 2020. Affirmed.

*Jason P. Brewer*, of Wilson, Brewer & Munson, P.A., of Arkansas City, for appellant Constance Kirchner.

*H. Douglas Pfalzgraf*, of Pfalzgraf Law Office, of Wellington, and *Carl N. Kelly*, of Kelly Law Offices, of Wellington, for appellee Robert D. Brant, administrator.

Before LEBEN, P.J., SCHROEDER, J., and LAHEY, S.J.

PER CURIAM:  Constance Kirchner (Connie) was a neighbor and personal care giver to Dale "Butch" Ramsey. Following Ramsey's death, Connie petitioned for allowance of demand against Ramsey's estate for the sum of $143,270. This sum represented the value of the services Connie provided to Ramsey over the course of approximately two years. Her claim was based on an alleged express oral contract, and alternatively implied contract and unjust enrichment. The district court denied Connie's claim against Ramsey's estate, and she appeals. After a thorough review of the record, we affirm the district court.

1

FACTUAL AND PROCEDURAL BACKGROUND

Ramsey died intestate on November 8, 2017. He lived on and owned a 1,500-acre ranch in Chautauqua County, Kansas. Around 20 years earlier, Ramsey sold 20 acres of his property to Connie and her husband, Mike. These 20 acres were formerly part of a 300-acre tract known as the "Jackson place."

In June 2015, Ramsey had surgery on his foot, and Connie provided him personal care assistance for three weeks. Among other things, Connie prepared Ramsey's meals, she changed the dressings on his foot, and she took him to doctors' visits. Ramsey told Connie he would "compensate [her] when we get done" and paid her $300 after three weeks of care.

A few months later, Ramsey was diagnosed with sepsis and was treated in a hospital for one month. After being discharged from the hospital, Ramsey was admitted to a nursing home in Arkansas City, Kansas, where he received additional care to rehabilitate his hand, elbow, and right leg. While in the nursing home, Ramsey complained about his care and refused to cooperate with staff. At Ramsey's request, Connie visited him in the nursing home every day and provided additional care, such as shaving his face and bringing him food. During this time Ramsey paid Connie $20 per day. Ramsey remained in the nursing home for one month.

The facts surrounding Connie's employment after Ramsey's release from the nursing home are disputed. Connie alleges that while driving Ramsey to his home upon his release from the nursing home, Ramsey told Connie he would need her services more often and he would "make sure [she was] compensated." According to Connie, Ramsey told her he was "going to take very good care of [her]" and he wanted her to have the Jackson place tract. She relies on this conversation as the basis for her oral contract claim.

2

Connie testified that she provided services to Ramsey 12 hours per day, every day, for 2 years. Connie prepared Ramsey's meals, changed and laundered his sheets, did his laundry, cleaned his house, took him to appointments, managed his medications, and helped take care of his cattle. Ramsey paid Connie once a month at a rate of $20 per day. This arrangement continued until Ramsey's death.

Several other witnesses testified in addition to Connie. Ramsey's accountant, Kent Miller, testified he had spoken to Ramsey about giving the Jackson place property to Connie and Mike. Based on his conversations with Ramsey in 2016, Miller drafted two documents that expressed Ramsey's interest in giving the Jackson place property to Connie. These documents were prepared for a meeting and admitted as exhibits, but they are not included in the record on appeal. Miller testified Ramsey told him he was considering giving his land to Connie "for her care and friendship that she had been giving him for—it was the support she had been giving to him over the years."

Connie also presented the testimony of Larry Krier and George Helterbrand, who were friends of Ramsey and had leased his land for hunting purposes for over 15 years. Krier testified Ramsey had mentioned making bequests to Connie on two occasions: "[O]nce saying that he needed to do something to take care of Connie for what she was doing for him and the second time was that there was a mention of the Jackson place." Helterbrand testified that a week before Ramsey died, Ramsey told him he was "going to give Connie and Mike the Jackson place." Helterbrand added, "Dale knows there's no free lunch in this world and he knew Connie was doing a lot of work for him and that was his way of compensating Connie for what she had done for him."

Five months after Ramsey's death, Connie petitioned for allowance of demand against Ramsey's estate. Connie's demand arose "from wages as a household servant" in the sum of $143,270. This amount was based on hours worked at the rate of $15 per hour, and $22.50 for overtime hours worked. The Estate took the position that Connie had been

paid according the agreement she had with Ramsey and was not entitled to any further payment. Although there was much testimony concerning the Jackson place property, Connie makes no claim to it.

The district court took the matter under advisement and later found Connie and Ramsey entered into a single valid oral contract for Connie "to perform certain services involving the care of Mr. Ramsey for the agreed upon sum of twenty dollars ($20) per day" and the contract was fully performed by both parties. The district court found there was "no evidence presented at trial of any written agreement to transfer land or provide any additional monetary compensation for [Connie] for her services." The district court noted Ramsey had "ample opportunity" to give Connie additional compensation or make estate planning decisions but he "took no such action." The district court also held there was no implied contract and Connie's services did not unjustly enrich the Estate because the services were fully performed under the oral contract.

Following the district court's ruling, Connie proposed supplemental factual findings. In denying the motion, as to the oral contract, the district court clearly noted "[t]he parties never renegotiated" the original oral contract.

Connie timely appeals.

I.    DID THE DISTRICT COURT ERR IN FINDING CONNIE FAILED TO ESTABLISH A NEW EXPRESS ORAL CONTRACT BY CLEAR AND CONVINCING EVIDENCE?

On appeal, Connie argues that she entered into an express oral contract with Ramsey in which he would pay her additional consideration over the $20 per day she received under the June 2015 oral contract. Generally, "[t]he standard of proof for demonstrating the existence of an oral contract is the preponderance of the evidence." *U.S.D. No. 446 v. Sandoval*, 295 Kan. 278, 282, 286 P.3d 542 (2012). However,

4

> "[i]t is well established that in an action against an estate to enforce an oral contract with a person since deceased the existence of the contract must be established by clear and convincing evidence. In these actions the ordinary civil standard of proof of a preponderance of the evidence is insufficient because of the inherent danger of fraud in claims against the estate of a decedent. [Citations omitted.]" *In re Estate of Stratmann*, 248 Kan. 197, 202, 806 P.2d 459 (1991).

Clear and convincing evidence exists when "the factfinder believes that the truth of the facts asserted is highly probable." *In re B.D.-Y.*, 286 Kan. 686, 697, 187 P.3d 594 (2008); see also PIK Civ. 4th 102.11 ("Evidence is clear and convincing if it shows that the truth of the fact asserted is highly probable.").

"The existence or nonexistence of a contract is a question of fact." *In re Estate of Stratmann*, 248 Kan. at 203. An appellate court reviews whether the trial court's findings of fact are supported by substantial competent evidence. *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 12, 61 P.3d 68 (2002).

Here, the district court found Connie and Ramsey entered into a valid oral contract in June 2015 and under this contract Connie was to perform care services for Ramsey "for the agreed upon sum of twenty ($20) per day." The district court denied Connie's claim for additional consideration because there was no evidence that Ramsey agreed to provide any land or additional monetary compensation for Connie's services. This finding is supported by substantial competent evidence.

Through her own testimony, Connie conceded she never entered into another contract with Ramsey for additional consideration outside the $20 per day agreed upon in June 2015. Connie testified she did not ask Ramsey for more money because he promised her she would be "well taken care of when he was done" and she trusted him when he told her he was "going to take very good care of [her]." Despite these promises, Connie conceded that she did not renegotiate the terms of the initial oral contract. Connie

5

claimed that although Ramsey told her he would give her additional consideration for her services, she did not renegotiate with him because she "didn't want to push his buttons."

Although Connie claimed Ramsey told her he was not paying her enough money and that he would "take care of [her]" when he was finished with her services, there was no evidence of an agreement between the two that changed the original oral contract. Because Connie's testimony spoke directly against the creation or renegotiation of a new oral contract, she failed to meet her burden of proof in establishing an oral contract existed for additional consideration. There is simply no evidence that Ramsey ever agreed or even contemplated paying Connie at the rate of $15 per hour rather than $20 per day. As a result, substantial competent evidence supports the district court's finding that the parties never renegotiated the original oral agreement.

Aside from arguing a new oral contract was negotiated, Connie briefly argues the district court erred in finding that "any amendment or subsequent agreement must be in writing." A review of the district court's decision, however, revealed the district court did not make a finding that a written agreement was required. Rather, the district court made a factual finding that Connie presented no evidence "of any written agreement" for the additional consideration requested. From this finding, the district court implicitly found Connie's claims were not sufficiently credible to be persuasive:  "Mr. Ramsey had ample opportunity, after he entered into the agreement with [Connie] but prior to his death, to grant to [Connie] additional compensation or make Estate planning decisions that would assure she would receive additional compensation upon his death. Mr. Ramsey took no such action." As noted, multiple witnesses testified Ramsey had told them he wanted to give Connie and Mike the Jackson place tract. While this evidence may have been substantial enough to support Connie's contention that Ramsey told her this was his plan, it does not necessarily support a conclusion that the parties entered into a new express oral contract.

6

Unlike the June 2015 oral contract that specifically provided for a $20 per day payment, all of the statements made to Connie by Ramsey are far more general in nature. For example, Connie testified Ramsey told her:

- "You're going to have to be around some more than you were."
- "Well, I'll make sure you're compensated when I'm done with you."
- "I'm going to take very good care of you."
- "I want you to have that land that's around your place and I want you to have some cash."

The testimony of Connie's witnesses was also general in nature. Miller testified Ramsey was considering giving the land to Connie for "the support she had been giving him over the years." Krier testified Ramsey had mentioned giving Connie the Jackson place "on two occasions" but gave a general explanation of "once saying that [Ramsey] needed to do something to take care of Connie for what she was doing for him and the second time was that there was a mention of the Jackson place." Helterbrand's testimony was the most direct, stating a week before Ramsey died he told him he was "going to give Connie and Mike the Jackson place" and "[Ramsey] knew Connie was doing a lot of work for him and that this was his way of compensating Connie for what she had done for him." In summary, Connie presented evidence that Ramsey was planning, or at least considering, giving Connie and Mike the Jackson place tract.

Here, the district court found clear and convincing evidence only of one oral contract for the payment of $20 per day for services and found it was fully performed. Connie failed to meet her burden that Ramsey orally contracted to provide any additional payment over and above what she actually received.

As a final note, Connie also suggests the district court has the authority to supply a "missing term" to a contract based on the evidence presented before it. See *NEA-*

7

*Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 397-98, 996 P.2d 821 (2000) ("'When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.'"). Connie argues we "should supply the missing term—the reasonable value of Connie's services." This argument is not persuasive given Connie's admission that she chose not to discuss or renegotiate her compensation level with Ramsey. We find substantial competent evidence supports the district court's determination that no separate or renegotiated oral contract existed.

One final observation. As noted, the district court was unpersuaded there had been a renegotiation of the original oral agreement between Connie and Ramsey. Connie failed to meet the burden of proving that an oral contract for additional compensation existed. The Kansas Supreme Court has required a different and more difficult appellate standard for "negative findings" by a trial judge, i.e., when a trial judge determines a party has failed to meet its burden of proof:

> "'Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed.' [Citation omitted.]" *Cresto v. Cresto*, 302 Kan. 820, 847-48, 358 P.3d 831 (2015).

On appeal, Connie does not argue the district court arbitrarily disregarded undisputed evidence, nor does she argue any bias, passion, or prejudice by the district court. Additionally, no such action by the district court is apparent from the record. Absent these elements, the finding of a trial judge cannot be disturbed.

II.    DID THE DISTRICT COURT ERR IN FINDING CONNIE FAILED TO ESTABLISH AN
IMPLIED CONTRACT?

As an alternative theory of recovery, Connie contends the facts and circumstances created an implied contract which obligates Ramsey to pay additional compensation.

Under Kansas law, parties may become contractually obligated by conduct or by oral or written words. Facts and circumstances showing mutual intent to contract establish an implied-in-fact contract. But "[b]ecause the intent must be mutual, an implied contract cannot be established solely by the employee's subjective understanding or expectation of his or her employment." *Peters v. Deseret Cattle Feeders, LLC*, 309 Kan. 462, 470, 437 P.3d 976 (2019). An implied contract "arises from acts and circumstances showing mutual intent to contract." *Mai v. Youtsey*, 231 Kan. 419, 422, 646 P.2d 475 (1982).

In describing the implied contract, Connie argues "the evidence at trial clearly established that [Ramsey] and Connie sought to renegotiate the terms of the initial June 2015 contract to provide for more care and more consideration" and "the facts and circumstances established that she provided the additional care based upon ]Ramsey]'s promise of additional consideration." Finally, Connie argues services rendered for decedent at his request "raises a presumption that they were to be paid for." Connie contends the Estate failed to rebut this presumption and, thus, an implied contract existed for the additional consideration she requested.  Connie is precluded from making her implied contract arguments because the district court found there was only one express oral contract and it was fully performed.

The Estate argues the existence of an express contract precludes recovery under an implied contract, citing *In re Estate of Fitzroy*, 172 Kan. 339, 240 P.2d 163 (1952). Connie acknowledges that proof of an express contract would defeat recovery under an

implied contract but contends this rule only applies when the express contract and implied contract arise from the same services. She again contends she provided services that were not contemplated in the original agreement and the facts and circumstances show a mutual intent to contract.

But the district court was not persuaded by those facts and circumstances and found there was no implied contract. It explicitly found that if any different or additional responsibilities were performed by Connie over time, they did not rise to the level of a "new" implied contract. And the district court found the parties never renegotiated the original contract, a fact admitted by Connie. Here, Connie established her subjective understanding and expectation of future compensation, but the district court was plainly not persuaded.

On appeal, Connie is essentially asking us to nullify the district court's disbelief of the evidence when she argues the "evidence at trial clearly established [Ramsey] and Connie sought to renegotiate the terms of the initial June 2015 contract to provide for more care and more consideration." But we do not reweigh evidence or pass on the credibility of witnesses. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

The district court found Connie failed to establish the existence of an implied contract. As noted above, this negative finding by a district court cannot be disturbed "'[a]bsent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice.'" *Cresto*, 302 Kan. at 845. Connie does not argue and we do not find arbitrary disregard of undisputed evidence or bias, passion, or prejudice in the record.

As a final note, Connie seeks to shift the burden on the Estate by quoting *In re Estate of House*, 164 Kan. 610, 611, 192 P.2d 179 (1948): "'Ordinarily the fact that

10

services were rendered decedent at his request or with his approval raises a presumption that they were to be paid for, unless the conduct, relationship, or situation of the parties is of such a nature as to rebut the presumption.'" Connie argues the Estate failed to rebut this presumption because the State only called the administrator to testify "to his own total lack of knowledge of [Ramsey's] business and estate plans."

This argument is not persuasive because the district court found Ramsey had services rendered at his request but the services were covered and paid for under the original oral contract. There is no presumption any additional payment was due. We find no error by the district court.

III.       DID THE DISTRICT COURT ERR IN FINDING CONNIE'S SERVICES DID NOT UNJUSTLY ENRICH THE ESTATE?

In her last alternative claim for relief, Connie argues her services unjustly enriched the Estate. The Kansas Supreme Court has consistently held there are three elements to a claim of unjust enrichment: "(1) a benefit conferred; (2) an appreciation or knowledge of the benefit by the one receiving the benefit; and (3) the acceptance or retention of the benefit under such circumstances as to make it inequitable to retain the benefit without payment of its value." *In re Estate of Sauder*, 283 Kan. 694, 719, 156 P.3d 1204 (2007); see also *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 176, 910 P.2d 839 (1996) ("'The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to [another].'").

The evidence shows Connie provided substantial services which were of significant benefit to Ramsey. Connie claims she is entitled to recovery under quantum meruit because the pay she received was far less than the reasonable value of the services provided. The Estate contends the existence of the express oral contract precludes a claim

in equity. The district court ruled there was no unjust enrichment—each party fully performed their respective part of their oral agreement and Connie could have renegotiated her original agreement if she was dissatisfied with her level of pay.

Whether a party may recover damages under an unjust enrichment theory is a question of law over which appellate courts have unlimited review. *T.R., Inc. of Ashland v. Brandon*, 32 Kan. App. 2d 649, 655, 87 P.3d 331 (2004).

Unjust enrichment is an equitable remedy generally not available to parties to a contract since their respective rights and obligations are governed by the contract. See *Midwest Asphalt Coating v. Chelsea Plaza Homes*, 45 Kan. App. 2d 119, 123, 243 P.3d 1106 (2010), *rev. denied* 292 Kan. 965 (2011). "When a court resolves a case based on quantum meruit, it finds that no contract existed. In such a case, the law creates a contract to prevent unjust enrichment." *Lindsey Masonry Co. v. Murray & Sons Construction Co.*, 53 Kan. App. 2d 505, 525, 390 P.3d 56 (2017). Here, the district court found a contract existed which provided for an agreed upon level of compensation, and that finding is supported by substantial competent evidence. Consequently, the rights and obligations of the parties are governed by the contract, and the district court did not err in denying the unjust enrichment claim.

Affirmed.