NOT DESIGNATED FOR PUBLICATION

No. 127,045

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PETER J. RITCHEY,
*Appellee*,

v.

BILLY JO LEWIS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Oral argument held October 15, 2024. Opinion filed December 6, 2024. Affirmed.

*Bruce Alan Brumley*, of Brumley Law Office, of Topeka, for appellant.

*Christine Caplinger*, of Caplinger Law, of Topeka, and *Bryan W. Smith*, of Smith Law Firm, of Topeka, for appellee.

Before COBLE, P.J., GARDNER, J., and CARL FOLSOM III, District Judge, assigned.

PER CURIAM: While living together as an engaged couple, Peter J. Ritchey and Billy Jo Lewis purchased a house and an adjacent, 40-acre property in separate transactions—Ritchey purchased the property and Lewis purchased the house. Lewis represented herself and Ritchey as the buyer's agent in these transactions. The couple later split up and Ritchey initiated a sale of the property to a third party, yet Lewis intervened. She placed a mechanics lien on the property and told Ritchey's title company that she had a right of first refusal on it. When the title company refused to issue Ritchey a title policy for the sale, he petitioned to quiet title to the property. Lewis filed several

1

counterclaims, including a claim of unjust enrichment. The district court denied Lewis' counterclaims and quieted title to Ritchey. Lewis appeals, arguing the district court applied an improper legal standard and ignored undisputed evidence in denying her unjust enrichment claim. Finding no reversible error, we affirm.

*Factual and Procedural Background*

Billy Jo Lewis and Peter J. Ritchey started dating in 2010, made the purchase that gives rise to this appeal in 2019, then split up in March 2021. During most of their relationship they lived together as an engaged couple. In 2012, Ritchey moved in with Lewis and her three children in their home on Lewis' 27-acre property in Auburn. Lewis owned that home and paid most of the expenses.

In 2019, Ritchey and Lewis decided to purchase a new home. They found a listing for a house on 10 acres and an adjacent 40-acre lot of unimproved land. Both properties were listed by one seller, who listed the properties in two ways: (1) the House and Land as one unit for $1,095,000; and (2) the House separately for $895,000. The sellers eventually made a third listing for the Land for $250,000.

Lewis and Ritchey decided to purchase the House and Land. Lewis did not want to buy the House without the Land and initially planned to buy both herself. But she later agreed with Ritchey that he would buy the Land, and she would buy the House in separate transactions. Lewis maintained a real estate license from her previous full-time career. She thus represented herself and Ritchey as the buyers' agent in completing the purchases of the House and Land. In this role, she negotiated prices for the properties based in part on Ritchey's ability to obtain sufficient financing for the Land.

Lewis initially negotiated a price of $750,000 for the House but Ritchey could not afford the $250,000 asking price for the Land. He was approved for a mortgage of

2

$120,000 and later obtained secondary financing for $30,000, some of which he secured by attaching as security and later selling a van that he co-owned with Lewis. Lewis thus negotiated with the seller's agent, Mary Froese, for a combined purchase price of $950,000 for the House and Land. Under this agreement, Lewis would pay $800,000 for the House and Ritchey would pay $150,000 for the Land.

Lewis prepared the real estate agreements for each sale. Ritchey checked a box in his contract stating an intent to enter a joint tenancy with a right of survivorship. He did not, however, list Lewis or any other person for this designation. And Ritchey's contract did not include a provision for a right of first refusal. That provision would have given Lewis the right, but not the duty, to buy the Land under the same terms for which Ritchey agreed to sell it to a third party. See *Trear v. Chamberlain*, 308 Kan. 932, 937, 425 P.3d 297 (2018). The holder of the right of first refusal gives up its chance to negotiate with the seller for a price lower than one the seller is willing to accept from a third party. 308 Kan. at 937. But Lewis claimed that before buying the Land, Ritchey verbally agreed that if he decided to sell the Land, Lewis would retain the right to buy it for the $150,000 price that Ritchey had paid for it. Because Lewis calls this agreement the right of first refusal, we do the same, understanding that this is a misnomer.

After closing on the House and Land, Lewis, Ritchey, and Lewis' children moved into the House and made some improvements to the Land. When Lewis and Ritchey split up in March 2021, Ritchey decided to sell the Land. He did not offer to sell the Land to Lewis and instead secured a third-party buyer who signed a purchase agreement for $250,000 in July 2021. But before the closing date for that sale, Lewis placed a mechanic's lien on the Land and notified Ritchey's title company that she had a right of first refusal on it. The title company then refused to issue the buyer a policy for the Land.

*Pretrial Proceedings*

Ritchey sued Lewis in November 2021, claiming rights to the Land and to Lewis' engagement ring. Ritchey petitioned the district court to cancel the mechanic's lien and to quiet title to the Land. His petition also claimed slander of title, abuse of process, and tortious interference with a contract. Ritchey claimed that the Land was titled and mortgaged in his name only, that Lewis had not given proper notice of the lien, and that he had not given Lewis a right of first refusal.

Lewis counterclaimed for damages, alleging breach of her right of first refusal based on contract, promissory estoppel, and unjust enrichment. She asserted that she would not have purchased the House without the Land and that she paid a higher price for the House for this reason and to help Ritchey. She also alleged that she owned equipment and paid for materials that Ritchey had damaged and/or used to improve the Land. She asserted that she did these things based on her belief that she and Ritchey would get married and keep the House and Land together. Lewis asked for specific performance of the agreement to sell her the property for $150,000. She alternatively requested monetary damages of $100,000 plus an amount that Lewis alleged she contributed to the down payment for the original purchase.

Ritchey later moved for summary judgment on several claims. Lewis voluntarily dismissed the mechanic's lien, and the district court granted summary judgment on Ritchey's claims related to the engagement ring. But the district court denied Ritchey's motion as it related to Lewis' counterclaims challenging the title to the Land. The district court explained that Lewis had raised material questions of fact, mostly in terms of her equitable defenses, sufficient to prevent summary judgment.

*Trial*

A three-day trial ensued. Ritchey testified and presented testimony from Froese, a representative of Ritchey's title company (T.J. Lorson), a lender from the bank that the parties used to finance their purchases (Anne Weigel), an appraiser (Scott Wartman), and a construction worker who helped make certain improvements to the Land (Juhn Bueltel). Their testimonies showed that during the purchase negotiations, Froese believed that Lewis and Ritchey had made separate offers for the House and the Land. Froese declined to characterize Ritchey and Lewis' purchases as arm's-length transactions and instead likened them to a hug, based on the parties' relationship. Weigel testified that the parties had not entered any joint financing agreements but had taken out separate loans to finance their purchases. As of October 2022, Wartman appraised the value of the Land at around $253,000 and estimated that the value of the House had increased to around $1,250,000.

Froese also explained that she had initial concerns about designating a $150,000 sale price for the Land, as she did not want the sale price to be lower than the actual worth of the property, which she estimated was around $200,000. Lorson agreed with Lewis' counsel that in his purchase contract, Ritchey checked the box stating he bought the Land "'in joint tenancy with right of survivorship.'" Yet Lorson indicated that Ritchey may not have intentionally checked this box because he did not list a joint tenant. Lorson also suggested that a person may not enter joint tenancy with themselves.

Lewis testified and presented testimony from several witnesses, including her sister, mother, new husband, daughter, and two sons. Lewis testified that she could have afforded both the House and Land on her own but agreed to let Ritchey buy the Land because he wanted to contribute and had not been paying rent.

Lewis also explained that during the negotiations for both properties, Froese told her that a buyer had offered the asking price of $250,000 for the Land. Lewis initially offered to pay $750,000 for the House but Ritchey could not afford the $250,000 asking price for the Land. To present a comparable offer within the confines of Ritchey's ability to pay, Lewis and Ritchey agreed to allocate $800,000 to the House and $150,000 to the Land. Lewis also explained that Ritchey secured a mortgage loan of $120,000 and later wrote a personal check for $11,000 of the $30,000 dollars that he needed in addition to the $120,000 loan. Because Ritchey was still short, Lewis and Ritchey used their jointly owned van to secure the rest of the financing with a promissory note.

Lewis also testified that "on one of the occasions that [they] visited the property, . . . [she stated to Ritchey], 'If anything ever happens to us, you have to promise to sell it back to me for the price that you paid, because I don't want just this house.'" She thus maintained that she "detrimentally relied on [Ritchey's] promise . . . that if he ever sold, that he would give [her] the first right to buy it back for the price that he bought it for."

Lewis' mother and sister testified that they heard Lewis and Ritchey make that agreement. Lewis' mother explained that she attended one of the walk-throughs of the House with Lewis and Ritchey. At the end of the walkthrough, they gathered in the kitchen to discuss Lewis paying more on the House to get a lower price for the Land. Lewis then told Ritchey that "if and when he ever [sold the Land], he needed to sell it back to her for what he purchased it for." Lewis' sister could not recall the specific instance that she heard the agreement but testified that she heard Ritchey and Lewis make that agreement before buying the House and Land. And she later heard Lewis and Ritchey argue about the agreement after their breakup.

Lewis' children gave similar testimony. Lewis' oldest son did not specify that he heard Lewis and Ritchey make the agreement but stated that he knew "there was some talk about the land and how it would be dealt with." Lewis' daughter testified that she

6

heard Lewis and Ritchey talking about the agreement. And Lewis' youngest son testified that he never heard Lewis and Ritchey discuss the agreement, but Ritchey once told him that "if anything ever happened, . . . [Lewis' family would] get the land, or first choice."

*District Court's Ruling*

Although the district court ruled on several issues not raised on appeal, some of its rulings nonetheless relate to the unjust enrichment claim raised on appeal. We thus summarize the district court's rulings on all the claims.

*No Written or Oral Contract for a Right of First Refusal*

The district court found no written right of first refusal. Lewis did not and does not dispute that no written agreement existed.

The district court also rejected Lewis' argument that the parties formed an oral contract granting her a right of first refusal. The district court made credibility findings favoring Ritchey's testimony that the parties never made an offer or acceptance. It also found no evidence that Lewis had given Ritchey any consideration for the alleged bargain of the right of first refusal, as is necessary to form a contract. Although Ritchey had used proceeds from the sale of the parties' van to pay off his loan for the down payment on the Land, the district court found that this was not consideration for the purchase of the Land because Lewis had not sold the van until *after* completing the Land purchase.

*No Promissory Estoppel*

The district court also refused to apply the doctrine of promissory estoppel as an exception to the statute of frauds. The district court considered the purpose of the doctrine and applied the following legal standard:

"Promissory estoppel is 'designed to promote some measure of basic fairness when one party makes a representation or promise in a manner reasonably inducing another party to undertake some obligation or to incur some detriment as a result.' *Bouton v. Byers*, 50 Kan. App. 2d 34, 41, 321 P.3d 780 (2014), *rev. denied* 301 Kan. 1045 (2015). Promissory estoppel may apply when '(1) a promisor reasonably expects a promisee to act in reliance on a promise; (2) the promisee, in turn, reasonably so acts; and (3) a court's refusal to enforce the promise would countenance a substantial injustice.' [50 Kan. App. 2d at 41]."

In addressing each of these elements, the district court first considered the parties' conflicting testimony regarding the existence of the alleged promise to Lewis. Although Lewis claimed that Ritchey made an oral agreement, Ritchey testified that he would have reconsidered his decision to buy the Land if Lewis asked for a right of first refusal because that would have suggested significant relationship problems. The district court found this testimony more credible than Lewis' and concluded that Ritchey did not promise Lewis a right of first refusal. The district court also found that even assuming Ritchey promised Lewis a right of first refusal, Lewis—as a licensed realtor—could not reasonably have relied on this verbal assurance.

The district court examined the element of substantial injustice by comparing the original list prices to the increased values of each of the properties. From this, the district court concluded that Lewis failed to prove that she suffered any loss during the purchasing process because she bought the House for less than its original listing price. The district court also found that Lewis would not suffer a significant loss if she could not buy the Land for $150,000 because the value of the house had increased since she originally purchased it.

*No Unjust Enrichment*

Finally, the district court denied Lewis' unjust enrichment claim. The district court considered the three basic elements of an unjust enrichment: (1) a benefit conferred; (2) knowledge of the benefit by the defendant; and (3) an unfairness caused by the retention of the benefit. Based on its review of the record, the district court found that Ritchey would not necessarily have paid $250,000 rather than $150,000 for the Land based on Lewis' increased offer of $800,000 for the House. It also rejected Lewis' suggestion that she had independently adjusted the offer price based on her desire to be generous and Ritchey's alleged assurances about their marriage and a right of first refusal. The district court instead found that Lewis and Ritchey negotiated and jointly decided to buy the Land and house separately. The district court also emphasized that Lewis, a licensed realtor, prepared the purchase contracts. The district court then held: "It would not be inequitable for Ritchey to retain the benefit of any future sale of the Land for a price above $150,000."

Lewis timely appeals.

*Did the District Court Err by Denying Lewis' Counterclaim Alleging Unjust Enrichment?*

Although Lewis appealed generally from the district court's order denying each of her counterclaims in her notice of appeal, her appellate brief challenges only the district court's denial of her unjust enrichment claim. We consider all issues not briefed to be waived or abandoned. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020).

Lewis raises two primary arguments on appeal:

9

- The district court improperly applied the third element of unjust enrichment because it did not consider whether Ritchey induced Lewis to pay more for the House, causing Lewis damages; and
- The district court erroneously focused on whether an oral contract existed rather than consider undisputed evidence showing she was induced to give Ritchey the benefit of a lower purchase price for the Land.

These arguments both target the third element of unjust enrichment (an unfairness caused by the retention of the benefit), as the parties generally agree that the first two elements are met: (1) a benefit conferred; and (2) knowledge of the benefit by the defendant.

Ritchey responds that these claims should be dismissed on procedural grounds. We address those procedural matters along with the merits, below.

*Our Standard of Review Is Bifurcated*

The parties dispute what standard of review applies to the district court's denial of Lewis' claim for unjust enrichment. Unjust enrichment—sometimes termed quantum meruit or quasi-contract—is an especially flexible equitable doctrine that permits a party to recover the value of a benefit conferred on a second party when the second party retains the benefit under circumstances that either commonly would call for payment or would otherwise make retention of the benefit without compensation patently unfair. See *Haz-Mat Response, Inc. v. Certified Waste Services, Ltd.*, 259 Kan. 166, Syl. ¶ 6, 910 P.2d 839 (1996).

If the relevant facts are undisputed, applicability of equitable unjust enrichment presents a question of law and thus grants unlimited appellate review. *T.R., Inc. of Ashland v. Brandon*, 32 Kan. App. 2d 649, 655, 87 P.3d 331 (2004). But judicial application of the doctrine necessarily entails a fact-bound, case-specific determination.

10

See *Haz-Mat Response*, 259 Kan. 166, Syl. ¶ 6 (retention without payment must be inequitable "under such circumstances" as the parties present); *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 781-82, 334 P.3d 830 (2014); Restatement (Third) of Restitution and Unjust Enrichment § 1, comment a (2011) (The "tradition" from which the modern law of restitution grows "authorizes a court to remedy unjust enrichment wherever it finds it."). And Lewis challenges both the district court's legal conclusion and factual findings. She thus raises a mixed question of fact and law, requiring our application of a bifurcated review standard. So we review the factual findings under the substantial competent evidence standard, disregarding any conflicting evidence or other inferences that might be drawn from the evidence. We then determine, de novo, whether those factual findings are sufficient to support the district court's conclusion that Lewis was not entitled to relief. See *Haz-Mat Response,* 259 Kan. at 176.

*The District Court Did Not Fail to Consider Inducement*

Lewis and Ritchey generally agree that an unjust enrichment claim arises when the following three elements are met:  (1) A benefit has been conferred upon the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust*. Nelson v. Nelson*, 288 Kan. 570, 580, 205 P.3d 715 (2009). Yet citing *Haz-Mat Response*, Lewis argues that the third element also requires consideration of an inducement in the conferring of a benefit. Lewis asserts that the district court could not properly dispose of her claim without finding Ritchey did not induce her acts of paying a higher amount for the House and allowing Ritchey to sell their van. She claims that Ritchey used their relationship to get her to do these things, yet she does not explain how he did so, other than to allege that they were in a relationship and he promised her a right of first refusal.

Ritchey contends that Lewis' argument about inducement is unpreserved and should be dismissed. Ritchey is correct that Lewis did not raise in the district court the

11

specific arguments that she makes on appeal. And issues not raised before the district court generally cannot be raised on appeal. *In re Adoption of Baby Girl G.*, 311 Kan. at 801. True, Lewis argued in her counterclaim that "Ritchey induced [her] into contributing financially to the purchase and maintenance of the [Land] in exchange for his promise" to sell her the Land. But she made this inducement argument only in support of her promissory estoppel claim—a claim that she does not raise on appeal. Still, the district court took evidence on that issue and made findings on it. Because some of that evidence relates to more than one claim, it is not neatly categorized under solely one. After all, the substantial injustice element of Lewis' promissory estoppel claim considers largely the same circumstances as does the unfair retention element of an unjust enrichment claim. We thus review the merits of this claim of inducement.

*No Inducement Causing Lewis Detriment Is Shown*

As to the merits, Ritchey counters that inducement is not an element in an unjust enrichment claim and relates more specifically to a claim of fraud, yet Lewis does not claim fraudulent inducement. We agree that Kansas law does not require a showing of fraudulent inducement to prove an unjust enrichment claim. Unjust enrichment does not require any nefarious conduct by the defendant that induced the plaintiff to act—just a showing that the defendant's retention of the benefit is unjust under the circumstances of the case. See *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.*, 21 Kan. App. 2d 833, Syl. ¶ 5, 908 P.2d 1315 (1995).

*Haz-Mat Response* did not hold that inducement must be proven to establish unjust enrichment. Yet it did state:

> "In the absence of evidence that the owner misled the subcontractor to his or her detriment, *or that the owner in some way induced a change of position in the subcontractor to his or her detriment,* or some evidence of fraud by the owner against the

12

subcontractor, an action for unjust enrichment does not lie against the owner by a subcontractor." (Emphasis added.) 259 Kan. at 178.

This language suggests that detrimental inducement, although not necessary, may be sufficient to prove the third element of an unjust enrichment claim.

But even assuming that Ritchey somehow induced Lewis to change her position on the House and Land purchase, Lewis failed to show that it was to her detriment, as the district court explained in refuting Lewis' claim of substantial injustice, an element of her promissory estoppel claim:

> "[T]here is no substantial injustice in refusing to enforce the alleged promise. Lewis says that without the promise, she would have simply bought the House and the Land herself in 2019. Lewis asserts that she and Ritchey decided to set the price of the House at $800,000.00 and the Land at $150,000.00 because that is what Ritchey could afford, and he wanted to contribute, so she let him. But in the meantime, Ritchey has paid interest on his loan and property taxes for the Land. The Land is appraised at $253,000.00. Lewis points to a potential windfall if Ritchey is now allowed to sell the Land—possibly for $250,000.00—when he only paid $150,000.00. Yet the House is appraised at $1,149,000.00, and Lewis only paid $800,000.00. Further, the House was originally listed for $895,000.00; Lewis paid $800,000.00. The Land was originally listed for $250,000.00; Ritchey paid $150,000.00. It would be a stretch to find substantial injustice in Lewis' alleged loss of chance to purchase the Land for $150,000.00 given the large increase in value of her investment in the House and the fact that she paid $95,000.00 below asking price for the House."

Those same findings support the district court's conclusion that it would not be unjust for Ritchey to gain or retain the $100,000 that Lewis seeks.

Lewis also suggests that the district court denied her unjust enrichment claim because it found the parties did not verbally agree to give her a right of first refusal. She

asserts that she did not need to prove that such an agreement existed and instead needed to prove only that "some sort of inducement" occurred. We agree that Lewis did not need to prove any agreement, written or spoken, to properly raise her claim of unjust enrichment. In fact, unjust enrichment is an equitable remedy generally not available to parties to a contract because their respective rights and obligations are governed by the contract. See *Midwest Asphalt Coating v. Chelsea Plaza Homes*, 45 Kan. App. 2d 119, 123, 243 P.3d 1106 (2010). So proof of such an agreement would preclude an unjust enrichment claim. See *JA-DEL, Inc. v. Winkler*, No. 118,441, 2019 WL 166936, at *5 (Kan. App. 2019) (unpublished opinion).

Still, inducement is not a required element of unjust enrichment. *Nelson*, 288 Kan. at 589. Instead, the necessary conditions for establishing unjust enrichment include inequity of retaining a benefit "without payment of its value." *City of Neodesha*, 50 Kan. App. 2d at 780. We thus decline Lewis' request to remand this case to allow the district court to make factual findings about an inducement.

### No Enforceable Contract Is Shown

Lewis also claims that the district court's finding that an oral agreement did not exist is contrary to the undisputed evidence at trial. In rejecting that argument, the district court made a credibility finding against Lewis. It "credit[ed] Ritchey's testimony that there was no offer or acceptance of a promise to provide Lewis a right of first refusal" and found a lack of consideration for such a bargain. Those three elements—offer, acceptance, and consideration—are the basic components of a valid, binding contract, whether written or verbal. See *M West, Inc. v. Oak Park Mall*, 44 Kan. App. 2d 35, 49, 234 P.3d 833 (2010). Lewis does not appeal the district court's finding that she failed to prove a breach of contract. Still, she contends that she proved Ritchey promised to give her a right of first refusal, and that his failure to do so makes his retention of the potential profit from his selling the Land to another unjust.

14

Ritchey argues that this court cannot overrule the district court's credibility findings or negative findings about an oral contract, so we must agree that no agreement for a right of first refusal existed. See *King v. Robbins*, 201 Kan. 748, 755, 443 P.2d 308 (1968) ("An appellate court will not set aside a negative finding of fact by nullifying a trial court's disbelief of evidence if such evidence is limited in quantity or its weight and credibility questionable, or if the evidence may be disregarded for any reason."). Ritchey then claims that because the parties did not make such an agreement, the district court correctly concluded that Lewis did not confer an unfair benefit on him. We agree that the district court's credibility findings limit our review of the existence of the right of first refusal, but that does not wholly preclude our review of Lewis' claim of unjust enrichment.

We thus reach Lewis' claim that the district court ignored her testimony and that of her family members that Ritchey promised her a right of first refusal. Yet Lewis acknowledges that this evidence was not undisputed. She simply contends that Ritchey's testimony was less credible than hers. But this court cannot weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 12, 61 P.3d 68 (2002). And proof of a matter does not necessarily depend on the greater number of witnesses, "since the testimony of the smaller number may be truthful and credible, and the testimony of the greater number may be discredited or untruthful." *Hughes v. Vossler*, 110 Kan. 279, 282, 203 P. 1107 (1922). So we must decline the invitation to disturb the district court's credibility finding. Lewis failed to show that she had an agreement for a right of first refusal or to buy the Land at the same price Ritchey had bought it.

*No Unjust Retention of Benefit Is Shown*

Lewis also argues that the district court ignored undisputed evidence of the $100,000 benefit that Ritchey retained. We disagree. The district court found that Ritchey

15

would not have necessarily paid $250,000 rather than $150,000 for the Land based on Lewis' increased offer of $800,000 for the House, and thus indicated that Lewis did not confer a benefit on Ritchey. The district court also found that even assuming Ritchey had promised Lewis a right of first refusal, Lewis—as a licensed realtor—could not reasonably have relied on a mere verbal assurance. And although detrimental reliance is not an element of unjust enrichment, whether Lewis relied on a promise by Ritchey is relevant in determining whether it would be inequitable for Ritchey to retain any benefit from not fulfilling that promise.

The recited conditions for an unjust enrichment claim have a certain circularity to them because unjust enrichment occurs when it would be unfair not to pay. *JA-DEL, Inc.*, 2019 WL 166936, at *2. Judicial application of these conditions requires a particularly fact-driven, case-specific analysis. See *Haz-Mat Response*, 259 Kan. 166, Syl. ¶ 6 (retention without payment must be inequitable "under such circumstances" as parties present).

The district court found that it would not be inequitable for Ritchey to retain whatever benefit he got from selling the Land to a third party for more than $150,000. And even if the findings supporting this conclusion are somewhat vague, Lewis did not object to their inadequacy before appealing. As Ritchey asserts, generally, a party bears the responsibility to object to inadequate findings of fact and conclusions of law to give the district court an opportunity to correct any alleged inadequacies. *In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 1107-08, 442 P.3d 457 (2019). And when, as here, no objection on the basis of inadequacy is made to a district court's findings of fact or conclusions of law, an appellate court can presume the district court found all facts necessary to support its judgment. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 510, 509 P.3d 1211 (2022). We do so here as to the district court's unjust enrichment findings.

The district court focused on the inconsistencies in the parties' testimonies suggesting Lewis' payment of $800,000 necessarily benefitted Ritchey in the amount of $100,000, the parties' relationship and joint decision-making in negotiating the purchase prices for the House and Land, and Lewis' knowledge as a real estate agent. The district court also considered the below-list price that Lewis paid for the House and the increased value of the House after her purchase. Lewis does not challenge these factual findings, and they are supported by the evidence.

But even if the district court ignored undisputed evidence that Lewis conferred a benefit on Ritchey, it does not necessarily follow that it would be unfair for him to retain that benefit without repaying Lewis. Cf. *Haile Group, LLC v. City of Lenexa*, No. 102,319, 2010 WL 4977221, at *15 (Kan. App. 2010) (unpublished opinion) (holding that even if district court incorrectly determined that plaintiff did not confer benefit to the defendant, panel would still affirm because evidence did not show that it would be unjust to allow defendant to retain benefit without payment to plaintiff). Lewis does not contend that Ritchey lured her into a romantic relationship for the purpose of buying the Land more cheaply. Instead, they had lived together as an engaged couple for many years before the possibility of the Land purchase arose. And she does not allege that Ritchey induced her to buy the House so he could buy the Land, while intending to later profit by breaking up with her. Nor does Lewis show that Ritchey promised to marry her so she would buy the House and help him buy the Land. After all, they lived together as an engaged couple during most of their relationship, which began in 2010, so they were engaged long before the possibility of this transaction arose in 2019. Cf. *Wilson v. Dabo*, 10 Ohio App. 3d 169, 170, 461 N.E.2d 8 (1983) (finding that plaintiff was entitled to money she gave her fiancé in reliance on his promise to marry—money was a "conditional" gift given with mutual understanding that parties would be married, and when that condition was not fulfilled, money had to be returned based on theory of unjust enrichment).

The district court's factual findings are supported by substantial competent evidence, and those findings are sufficient to support the district court's legal conclusion that Lewis was not entitled to relief on her claim of unjust enrichment.

Affirmed.